# The People of the State of New York, Respondent, v Suraj Narayan, Appellant.

Second Department, August 18, 1980

### APPEARANCES OF COUNSEL

*Suraj Narayan,* appellant *pro se* and *Anthony V. Lombardino* for appellant.

*John J. Santucci, District Attorney (Joan L. Craig* of counsel), for respondent.

### OPINION OF THE COURT

GIBBONS, J.

The principal question presented on this appeal concerns whether the defendant was deprived of his constitutional right to the assistance of counsel when the trial court prohibited him from consulting with his attorney during a period of approximately 24 hours, extending over two days of trial. Under the circumstances of this case, we hold that the defendant's Sixth Amendment rights were violated, and, accordingly, we reverse (see *Geders v United States,* 425 US 80).

The defendant was indicted for murder and his trial commenced on May 21, 1976. On the morning of June 14, he took the stand in his own defense. At the conclusion of a portion of his direct examination, which consumed some 62 pages of trial transcript, a brief recess was ordered by the court. After the jury was excused, the court addressed the following admonitions *to the defendant and his attorney:*

"THE COURT: *Don't talk to him about his testimony. Don't talk to Mr. Lombardino* [defendant's attorney] *or anybody else about your testimony,* you understand that?

"THE WITNESS: Yes, Sir.

"THE COURT: Step down." (Emphasis added.)

Following the recess, the defendant resumed the stand and direct examination continued until the court ordered a luncheon recess. After the jury left the courtroom, the court again

cautioned the defendant as follows: "THE COURT: The defendant is remanded. *Don't discuss your testimony."* (Emphasis added.)

At 2:15 P.M., when trial resumed, the defendant's cross-examination began and continued through the balance of the afternoon during which testimony was taken, extending over 70 pages of the record.

At the end of the day, an issue arose concerning the propriety of a question asked by the prosecutor. Reserving decision on that issue, the court recessed for the day. At no time prior to the recess did the court change its previous ruling or in any way indicate to the defendant or counsel that discussion between them could be resumed.

At the opening of court the next day, all parties appeared and a sidebar discussion was held concerning the issue left open the previous day. After the court had rendered its decision on that issue, but before the jury had re-entered the courtroom, defense counsel addressed the court concerning its prior order forbidding communication between him and the defendant. The following transpired:

"MR. LOMBARDINO: I would like to place something on the record. I have a legal point to make.

"MR. GAUDELLI [Assistant District Attorney]: May we have it at sidebar?

"THE COURT: He is on the stand.

"MR. LOMBARDINO: May I say an attorney has the right to speak to his client at all stages of the proceedings.

"THE COURT: Not while he's testifying.

"MR. LOMBARDINO: I respectfully except and I respectfully submit *I am being denied the right to consult with my—the defendant is being denied the right to consult with counsel.*

"THE COURT: Step up.

"(The witness, Suraj Narayan, resumed the witness stand, having been previously sworn and testified in his own behalf:)

"COURT OFFICER: You are still under oath, Mr. Narayan.

"THE COURT: All right, *no further applications.* Bring in the jury, please." (Emphasis added.)

When the defendant resumed the witness stand, the District Attorney immediately questioned him as to whether he had spoken with his attorney since his last appearance in court. The defendant acknowledged that he had spoken with his

attorney for "a few minutes" and the District Attorney pressed the point:

"Q You discussed this case with your lawyer?

"A My lawyer told me to.

"Q To ask me that question.

"A *Be polite and relax."* (Emphasis added.)

The cross-examination continued that morning until a 15-minute recess was ordered. The defendant was remanded, and defense counsel again addressed the court on the subject of access to his client:

"MR. LOMBARDINO: *Again,* I would like to have the Court's permission that I can speak with my client during the recess.

"THE COURT: Overruled.

"MR. LOMBARDINO: Respectfully except.

"May the record indicate he's still on cross examination and he's being denied an opportunity to speak with me during the recess.

"THE COURT: Let the record so indicate." (Emphasis added.)

Following the recess, a discussion was had concerning the admissibility of certain statements made to a psychiatrist. Thereafter, the Trial Judge, *sua sponte,* referred to counsel's prior application to speak to his client. The Judge said:

"THE COURT: You made an application. You want to talk to your client?

"While I have these rulings to make, and I reserve *[sic]* decision last night on a question of whether the District Attorney was going to—withdrawn.

"The District Attorney had a basis for asking the questions, *I said you can't talk to him. While I was researching my decision, while this questioning was going on,* I said you can't talk to him. I think I am right.

"Now, I have made my determination here you can talk to him. If you want to talk to him now before he gets back on the stand, you want to talk to him?

"MR. LOMBARDINO: He has some questions he wanted to ask me.

"THE COURT: Go ahead. I want the record to reflect that.

"MR. LOMBARDINO: Very well, thank you." (Emphasis added.)

From the foregoing, it becomes abundantly clear that the trial court's order was intended to, and did, prevent all

meaningful communication between the defendant and his attorney from the morning of June 14, 1976 until some point during trial on the next day.

The nature and the extent of the discussion between the defendant and his attorney during that period, in their attempt to comply with the order, are revealed in the following testimony of the defendant:

"Q Bobby, did you speak with me last night?

"A Yes, sir.

"Q At the end of the Court day, did you speak to me after the Court day was over?

"A *Not business.*

"Q All right.

"Now, were you unable to speak to me?

"MR. GAUDELLI: Objection.

"THE COURT: Overruled.

"A Yes, sir, because—

"Q Why were you unable to speak to me?

"A * * * *court ordered no conversation regarding my testimony.*" (Emphasis added.)

It is clear from the record, therefore, that the court imposed a barrier between attorney and client lasting approximately 24 hours, and that the defendant and counsel understood the import of the ruling and abided by it.

In the context of this case, the issue raised by the court's action is essentially twofold. The first question is whether the refusal of the court to permit communication between defendant and his counsel violated defendant's Sixth Amendment rights. Faced with the issue of whether a defendant's right to counsel was abridged by a trial court's direction to him not to consult with his attorney during an overnight recess, the United States Supreme Court in *Geders v United States* (425 US 80, 87-91, *supra),* held as follows:

"The trial judge here sequestered all witnesses for both prosecution and defense and before each recess instructed the testifying witness not to discuss his testimony with anyone. Applied to nonparty witnesses who were present to give evidence, the orders were within sound judicial discretion and are not challenged here.

*"But the petitioner was not simply a witness; he was also the defendant. A sequestration order affects a defendant in*

*quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial.* A nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial. Moreover, 'the rule' accomplishes less when it is applied to the defendant rather than a nonparty witness, because the defendant as a matter of right can be and usually is present for all testimony and has the opportunity to discuss his testimony with his attorney up to the time he takes the witness stand.

"The recess at issue was only one of many called during a trial that continued over 10 calendar days. But it was an overnight recess, 17 hours long. It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

" 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . [A defendant] is unfamiliar with the rules of evidence. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he [may] have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' *Powell v. Alabama,* 287 U.S. 45, 68-69 (1932).

"See also *Argersinger v. Hamlin,* 407 U.S. 25, 31-36 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 343-345 (1963). Other courts have concluded that an order preventing a defendant from consulting his attorney during an overnight recess infringes upon this substantial right. See *United States v. Venuto,* 182 F. 2d 519 (CA3 1950); *People v. Noble,* 42 Ill. 2d 425, 248 N.E. 2d 96 (1969); *Commonwealth v. Werner,* 206 Pa. Super. 498, 214 A. 2d 276 (1965). But see *People v. Prevost,* 219 Mich. 233, 189 N.W. 92 (1922).

"There are other ways to deal with the problem of possible improper influence on testimony or 'coaching' of a witness short of putting a barrier between client and counsel for so long a period as 17 hours. The opposing counsel in the adversary system is not without weapons to cope with 'coached' witnesses. A prosecutor may cross-examine a defendant as to the extent of any 'coaching' during a recess, subject, of course, to the control of the court. Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination. In addition the trial judge, if he doubts that defense counsel will observe the ethical limits on guiding witnesses, may direct that the examination of the witness continue without interruption until completed. If the judge considers the risk high he may arrange the sequence of testimony so that direct- and cross-examination of a witness will be completed without interruption. That this would not be feasible in some cases due to the length of direct- and cross-examination does not alter the availability, in most cases, of a solution that does not cut off communication for so long a period as presented by this record. Inconvenience to the parties, witnesses, counsel, and court personnel may occasionally result if a luncheon or other recess is postponed or if a court continues in session several hours beyond the normal adjournment hour. In this day of crowded dockets, courts must frequently sit through and beyond normal recess; convenience occasionally must yield to concern for the integrity of the trial itself.

"There are a variety of ways to further the purpose served by sequestration without placing a sustained barrier to communication between a defendant and his lawyer. *To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper 'coaching,' the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel. Brooks v. Tennessee, 406 U. S. 605 (1972).*

"The challenged order prevented petitioner from consulting his attorney during a 17-hour overnight recess, when an accused would normally confer with counsel. We need not

reach, and we do not deal with, limitations imposed in other circumstances." (Emphasis added.)

Significantly, the Supreme Court did not make its holding in *Geders (supra)* dependent upon a showing of prejudice, for as the court held in *Glasser v United States* (315 US 60, 76): "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Cf. *Snyder v. Massachusetts,* 291 U. S. 97, 116; *Tumey v. Ohio,* 273 U. S. 510, 535; *Patton v. United States,* 281 U. S. 276, 292. And see *McCandless v. United States,* 298 U. S. 342, 347." (See, also, *United States v Venuto,* 182 F2d 519, cited with approval in *Geders v United States, supra,* p 89.)

Clearly, under the holding of *Geders (supra),* the court's direction to the defendant here not to consult with his attorney during the overnight recess violated the defendant's constitutional right of access to counsel.

The rule expressed in *United States v Horger* (547 F2d 1204, cert den 434 US 840), to which reference is made in the dissent, is both distinguishable and not inconsistent with this determination. The *Horger* court, in holding that *Geders* (425 US 80, *supra)* was not to be applied retroactively, also stated that *Geders* would have required a reversal of the conviction in that case were it to be given a retroactive effect. In the instant matter, retroactivity is not an issue inasmuch as this case was tried subsequent to *Geders (supra).* Moreover, the court in *Horger (supra)* viewed the situation, therein posed, as a case concerning *ineffective assistance* of counsel, whereas *Geders (supra,* p 91) makes it very clear that a case involving the creation of a court-inspired barrier between attorney and client was one which "impinged upon his *right to the assistance of counsel guaranteed by the Sixth Amendment".* (Emphasis added.)

It is worthy of observation that subsequent to *Geders (supra),* the rationale expressed in the concurring opinion of Justice BRENNAN and Justice MARSHALL forbidding any intrusion by the court into the lawyer-client relationship, including during the short interval of a noon recess, was followed in *United States v Allen* (542 F2d 630, 633-634), and in *United States v Bryant* (545 F2d 1035, 1036), where the court held as follows: "In the absence of extraordinary circumstances, which do not appear in this record, it is an abuse of discretion and a violation of the right of a defendant to assistance of counsel

for a trial court to direct that the defendant have *no* communication with his counsel during a criminal trial. As the Supreme Court said in *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), 'He requires the guiding hand of counsel at every step in the proceedings against him.' The order forbidding consultation between the defendant Alexander and her attorney *during the noon recess of her criminal trial* deprived her of a right guaranteed by the Sixth Amendment to the United States Constitution." A similar determination, involving a luncheon recess, was made in *Stripling v State* (349 So 2d 187, 192 [Fla], cert den 359 So 2d 1220).

■ We turn next to the question of whether the error has been preserved for our review. On the morning after the court's ruling, an exception was noted on the record which was followed by the court's direction that the interdiction be continued. In any event, it is settled that an error involved the deprivation of a defendant's constitutional right to counsel in a criminal proceeding is of substantial magnitude (see *Gideon v Wainwright,* 372 US 335, *supra*). Indeed, in *Chapman v California* (386 US 18, 23), it was held that such right was so basic to a fair trial that its violation may never be treated as harmless error. Our Court of Appeals has taken a similar view. In *People v Arthur* (22 NY2d 325, 329), Judge SCILEPPI, writing for the court, stated that: "[t]he failure to object to the admissions on right to counsel grounds is not fatal since we are *concerned with the deprivation of a fundamental constitutional right (People v. McLucas,* 15 N Y 2d 167).'' (Emphasis added.)

The Court of Appeals in *People v Felder* (47 NY2d 287, 296) held, with respect to the gravity of an impairment of a defendant's right to counsel, as follows: "*A denial of the right to assistance of counsel,* however, not unlike prosecutorial misconduct, misconduct on the part of the Trial Judge or denial of a public trial, *invalidates the trial.* As the Supreme Court has recently said, 'this Court has concluded that the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *(Chapman v. California, supra* [386 US], at 23.' *(Holloway v Arkansas,* 435 US 475, 489.)'' (Emphasis added.) (See, also, *People v Ermo,* 47 NY2d 863.) Accordingly, we hold that the error herein is preserved for our review, and that reversal is required.

■ As to the defendant's challenge to the pretrial order

denying his motion to suppress a blood sample taken from his coat, we find that the police entry into the defendant's apartment was lawfully effected pursuant to an outstanding warrant of arrest charging the defendant with assault. The record reveals that the entry was accomplished in accordance with the requirements of CPL 120.80 (subd 4), and that the blood sample sought to be suppressed was taken from the defendant's coat which the police officer found in plain view immediately upon entering the apartment. The defendant's motion to suppress the blood samples was, therefore, properly denied.

We have considered the other contentions advanced by the defendant and find them to be without merit.

MARTUSCELLO, J. (dissenting). The evidence supports the view that during the early morning hours of December 25, 1974 the defendant attacked Sandra Zahler in her Kew Gardens apartment. Using a blunt instrument, probably a hammer, defendant crushed the left side of her skull. Sandra's body was discovered on December 26, 1974 in a blood-spattered apartment. The majority, by extracting portions of the trial transcript and interpreting them in a way most unfavorable to the People, concludes that the defendant is entitled to a new trial on the ground that he was denied his right to counsel during the trial. I disagree. In my view a fair examination of the record shows that while Criminal Term committed error in regard to the issue of defense counsel's consultation with the defendant, it does not warrant reversal.

As the majority notes, the trial commenced on May 21, 1976. At the conclusion of proceedings on Friday, June 11, 1976, the following discussion occurred between the court and Mr. Lombardino, defense counsel:

"MR. LOMBARDINO: I'm seeking the Court's assistance in something. I want to spend time with the defendant tomorrow in preparation for the defense of this case. There is a facility, I understand, in the Department of Correction, a room which is seldom used, where an attorney can sit down and consult with his client in just about complete privacy. I would respectfully ask Your Honor to have someone from the Department of Correction, who is sitting inside now,—

"THE COURT: Well, I have no control over the Department of Correction. All I can do is request them to afford you the opportunity to be able to talk to your client under circum-

stances that affords privacy. If there's a room for that purpose, that's up to them.

"MR. LOMBARDINO: Well, if they won't do it, that's up to them. I would appreciate if Your Honor would ask them to afford me this opportunity to consult with my client tomorrow in this room they have over there, which is of a private nature.

"THE COURT: Where is this, in the Queens House of Detention?

"MR. LOMBARDINO: Yes.

"THE COURT: All right."

On the next trial day, namely Monday, June 14, 1976, after reconvening, the following discussion occurred in court:

"THE COURT: * * * Now, did you have an opportunity to talk to your client over the weekend?

"MR. LOMBARDINO: Yes, I did, your Honor.

"THE COURT: All right. Let the record indicate that I spoke to the Corrections Department to afford you the opportunity to see him. I wanted you to note for the record that was done.

"MR. LOMBARDINO: Without your Honor's intersession [sic] that never could have been possible because they let me stay there until 5 o'clock."

Shortly thereafter defendant took the stand and testified in his own behalf about his activities on December 24, 25 and 26, 1974.

The majority correctly notes that before two recesses on June 14, 1976, the court told defense counsel and defendant not to confer. On neither occasion did defense counsel register any objection. At the conclusion of the proceedings on that day, the court recessed without mention of any restriction at all on defendant's right to consult with his attorney.

On the next day, Tuesday, June 15, 1976, defense counsel for the *first* time made an issue of consultation with his client. Strangely, he did not commence discussion of the issue by stating that he wished to consult with his client but rather by stating that he wished "to place something on the record. I have a legal point to make." Only then did counsel ask to consult with his client. The inference raised by the manner in which counsel raised the point is that he was seeking to make a record for purpose of appeal rather than to persuade the court to permit him to consult with his client (cf. *United States v Leighton,* 386 F2d 822, 823, cert den 390 US 1025).

While the court refused to allow consultation between counsel and client, a short while later (37 pages in the transcript) the court rescinded the ban. The majority, seeking to bring this case within *Geders v United States* (425 US 80), concludes that the defense abided by this ban from Monday morning, June 14, 1976, until Tuesday morning June 15. The majority therefore maintains that the ban on consultation was of such long duration as to violate the principle of *Geders (supra).* In concluding that the defense abided by the ban for all of Monday and Tuesday morning, the majority points to defense counsel's self-serving redirect examination of defendant where defendant indicates that he did not speak to counsel on the prior night (Monday night) because the court ordered that there be no consultation.

Regrettably the majority ignores a portion of defendant's cross-examination during which the following occurred:

"Q Did you discuss the case with your attorney yesterday [Monday] at all?

"MR. LOMBARDINO: I object.

"THE COURT: Overruled.

"A Nothing to discuss except he told me to relax and be calm and come to Court."

This comment reflects a lack of consultation not because of the judicial ban but, rather, because of a lack of a need to consult—a fact easy to understand after the long session held between counsel and client on Saturday, June 12, 1976. However, whether or not defendant abided by the ban is not the central issue of this appeal.

In *Geders v United States (supra,* p 91) the court stated the following in regard to a defendant (petitioner) who had been banned from consulting with his attorney: "The challenged order prevented petitioner from consulting his attorney during a 17-hour overnight recess, when an accused would normally confer with counsel. We need not reach, and we do not deal with, limitations imposed in other circumstances. We hold that an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." The concurring opinion of Mr. Justice MARSHALL, as well as note 2 at page 89, which cites *United States v Leighton (supra),* makes clear that the court was not by its

decision in *Geders (supra)* holding that brief bans on consultation between counsel and defendant were so violative of a defendant's right to counsel as to warrant reversal. In *Leighton* (386 F2d 822, *supra),* the Court of Appeals for the Second Circuit, held that reversible error did not arise from the fact that defendant had been banned from consulting with his attorney during an 85-minute luncheon recess.

It is therefore obvious that for the majority to reverse it could not rely solely on the June 15 prohibition on consultation, which was of very brief duration, but that it also had to be able to include June 14 and the overnight period from June 14 to June 15. Such an approach faces two obstacles. One, the absence of any objections on June 14, and two, the fact that Criminal Term did not restate its prohibition when recessing at the end of the June 14 proceeding.

It seems that the majority addresses the latter problem by seeking to create the inference that the parties believed they were under a ban when the court recessed for the night on June 14. The inference is far from clear. More significantly, the undisputable fact is that an examination of the trial transcript shows the absence of any ban at the conclusion of the June 14 proceeding.

However, even if the point of an overnight ban is conceded, a further fact remains—the absence of any objection to the ban on June 14 and the *lack of any request* by counsel to confer with the defendant. That defense counsel, an attorney experienced in matters of criminal law, understood the significance of an objection in this regard is indicated by his statement to the court on the morning of June 15 that he wishes to place something on the record and has a "legal point" to make.

In order to avoid the effect of the lack of objection, the majority calls the error here one of fundamental constitutional right which is subject to review even in the absence of objection. I disagree. The error here is not of such nature as to warrant review in the absence of any objection. In this regard it is noteworthy that in *Geders* (425 US 80, *supra)* an objection had been raised (see *United States v Burton,* 584 F2d 485, 511, cert den 439 US 1069).

Since defendant did not object to the ban on consultation issued on June 14, the threshold issue is whether the error should be reviewed either in the interest of justice (CPL 470.15) or under the rule of *People v Patterson* (39 NY2d 288,

affd 432 US 197). As to the former, review is certainly not warranted since the evidence of guilt is strong, and the harm which may have resulted from the error was minor and could not have conceivably affected the verdict (cf. *People v Etheridge,* 71 AD2d 861; *People v Washington,* 68 AD2d 90).

As to the latter, in *Patterson (supra,* pp 295-296) the court noted that there is a narrow exception to the requirement of a timely objection, stating that: "A defendant in a criminal case cannot waive, or even consent to, error that would affect the organization of the court or the mode of proceedings proscribed by law * * * the purpose of this narrow, historical exception [being] to ensure that criminal trials are conducted in accordance with the mode of procedure mandated by Constitution and statute." The court held that errors which go to the essential validity of the proceedings conducted below should be reviewed even in the absence of an objection (see *People v Thomas,* 50 NY2d 467; *People v Michael,* 48 NY2d 1). *People v Musolino* (54 AD2d 22, 25, cert den 430 US 935)[1] explained this aspect of *Patterson (supra)* in the following way: "The exemption found controlling in *Patterson* applies where the entire structure of the guilt-determining process is flawed."

In *United States v Horger* (547 F2d 1204, cert den 434 US 840), a case dealing with the retroactivity of *Geders (supra),* a defendant was barred from consulting with his attorney overnight. *Horger (supra)* is instructive in regard to the issue of whether the *Patterson* exception is applicable here. The court in *Horger (supra,* p 1205), in discussing the nature of the error committed, stated: "Here there was no showing of any need for consultation between lawyer and client during the overnight recess. No prejudice is shown; counsel quite frankly claims none. In this case the integrity of the fact-finding process seemingly is implicated not at all. Even if we speculate that there may have been some communication between lawyer and client had the defendant-witness not been instructed as he was, the reliability of the fact-finding process is

---

1. The majority relies on *People v McLucas* (15 NY2d 167). In *Musolino (supra,* p 25, n), the court discussed the lack of vitality of *McLucas* in view of the holding in *Patterson* (39 NY2d 288, *supra),* and stated: "The one case which seems to broaden the exception [of considering unobjected errors] is *People v McLucas* (15 NY2d 167), where the trial court's comment on the defendant's failure to take the stand, even though not protested, was held ground for reversing the conviction. In *Patterson* the court suggests that *McLucas* might be an eccentric decision *(People v Patterson, supra,* p 295)."

but slightly implicated." Similarly, here there is no claim of prejudice,[2] and the fact-finding process is seemingly implicated not at all. Accordingly, it cannot be said that the error committed here goes to the essential validity of the proceedings conducted below or that the entire structure of the guilt-determining process was flawed. Therefore, under the rule stated in *Patterson* (39 NY2d 288, *supra),* defendant's failure to object on June 14 should preclude our review of the error committed on that day.

In sum, our review of the error below should be limited to what occurred on June 15, 1976. The ban imposed on that date was of insufficient duration to warrant reversal since shortly after defendant raised an objection the ban was lifted *(United States v Leighton,* 386 F2d 822, *supra).*

Accordingly, the judgment of conviction should be affirmed.

MOLLEN, P. J., and DAMIANI, J., concur with GIBBONS, J.; MARTUSCELLO, J., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Queens County, rendered August 12, 1976, reversed, on the law, and new trial ordered. The facts have been considered and are determined to have been established.

---

2. If there were any, defendant's appellate counsel would certainly be aware of it since he was also trial counsel.