■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SURAJ NARAYAN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Balbach, J.), rendered August 12, 1976, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. By

order dated August 18, 1980, this court reversed the judgment (Martuscello, J., dissenting), on the law, and ordered a new trial (*People v Narayan,* 76 AD2d 604). On October 29, 1981, the Court of Appeals reversed the order of this court, reinstated defendant's conviction, and remitted the case to this court for further consideration (*People v Narayan,* 54 NY2d 106). Judgment affirmed. The facts of this case are fully set forth in this court's opinion (per Gibbons, J.), issued upon the defendant's direct appeal. In our view, the trial court's denial of defense counsel's request to confer with his client on June 15, 1976, did not, standing alone, rise to the level of reversible error. Within a very short time the same morning, the trial court *sua sponte* reversed itself and permitted the defendant and counsel to confer, so that any alleged interference with their right to consult was minimal. Our distinguished dissenting colleague disagrees, reasoning that "[s]ince inquiry into the special and privileged relationship existing between attorney and client is precluded, it is not possible to ascertain with any degree of certitude what they may have discussed in relation to the defense of the charge during the period when access was prevented, nor how crucial such consultations could have been." Carried to its logical conclusion, however, this analysis would make virtually any interruption of access between an attorney and his client, no matter how brief, reversible error per se, since no inquiry could ever be made into what might have been discussed had unrestricted access been allowed. We are not persuaded that this is the law for, if it were, the Court of Appeals undoubtedly would have ordered a new trial in this case based upon the interruption of access which occurred on June 15, and which was duly protested. The fact the Court of Appeals did not order a new trial is evidence that the broad rule which the dissent proposes by implication is not the law of this State. It is also not without significance that in *Geders v United States* (425 US 80, 91), the leading case in the area, the Supreme Court refrained from announcing any such sweeping rule, but held only that "an order preventing [a defendant] from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." We therefore reject the notion that every restriction upon a defendant's access to his attorney constitutes reversible error per se. Rather, we adopt the view that each case must be judged on its own facts. In the case at bar, the June 15 ruling was of very limited duration and effect, and we note additionally that, unlike in *Geders* (*supra*), the court here did not prohibit all conversation but only discussion of the defendant's testimony. In these circumstances, we find no error of law requiring reversal. Finally, as to the events of June 14, 1976, we decline to exercise our interest of justice jurisdiction to review the trial court's ruling to which no objection was raised. Accordingly, we affirm. Mollen, P. J., Damiani and Weinstein, JJ., concur.

Gibbons, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: I can subscribe to neither of the conclusions of the majority that the trial court's deprivation of defendant's access to his counsel on June 15, 1976 was "of very limited duration and effect", nor that "any alleged interference with their right to consult was minimal." Since inquiry into the special and privileged relationship existing between attorney and client is precluded, it is not possible to ascertain with any degree of certitude what they may have discussed in relation to the defense of the charge during the period when access was prevented, nor how crucial such consultations could have been. To now say that such interference with their right to consult was "minimal" is but to speculate on the degree of prejudice sustained. As stated in *United States v Venuto* (182 F2d 519, 522), there is no requirement

that the "defendant and his counsel must prove affirmatively the exact prejudice produced by this injunction [barring consulation between attorney and client] in a federal prosecution." Not only would this require them to declare what would have been privileged communications between attorney and client, but, as stated in *Glasser v United States* (315 US 60, 76): "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." The conclusion of the majority that the interference with defendant's right to consult with his attorney was minimal presumes to evaluate the quality and the crucial import of the consultations that were prevented. There are no facts in this record to support such conclusion, and, for that reason, the error committed on June 15, and to which objection was timely noted, warrants reversal of the judgment on the law and a direction for a new trial. The error committed on June 14 and continuing through to the early part of June 15, though not timely protested, was of equal detriment in the impairment of defendant's constitutional right to unrestricted and uncurtailed access to his attorney and, therefore, warrants reversal of the judgment in the interest of justice and a new trial *(People v Cona,* 49 NY2d 26). With respect to the conclusion by the majority that the court's interference with defendant's right to counsel was of a very limited duration, I state, at the outset, that I am mindful of, and have no quarrel with, the proposition of law that orderly procedure demands that the progress of a trial should not be unduly disrupted by frequent and persistent attempts by defense counsel to interrupt the proceeding by withdrawing the defendant from the witness stand during his cross-examination for the purpose of consultation. Here, however, as demonstrated by the trial record to which reference will hereafter be made, there is no factual basis to support the conclusion by the majority that the refusal by the court to permit consultation between defendant and his counsel was of a short or limited duration or that to permit such contact would have been disruptive of the orderly progress of the trial. Moreover, it is, indeed, but an unsupported inference, indulged in by the majority, to suggest that the bar to access on June 15 was within permissible bounds for if the law were otherwise, "the Court of Appeals undoubtedly would have ordered a new trial in this case based upon the interruption of access which occurred on June 15, and which was duly protested. The fact that the Court of Appeals did not order a new trial is evidence that the broad rule which the dissent proposes by implication is not the law of this State." Let it be clearly noted that the propriety of the bar to access on June 15, to which timely protest was made, was specifically *not* passed upon by the Court of Appeals for the reasons, as stated in its opinion *(People v Narayan,* 54 NY2d 106, 113-114), that this court, in reversing, acted beyond the scope of its appellate authority to review errors of law by giving consideration, as a continuing interruption, to both the interference with access on June 14, to which no protest was made, and the bar to access on June 15, to which timely protest had been made. I decline to indulge the thought that the Court of Appeals resolved by implication the question concerning the events of June 15, now preserved for review, in view of its clear language that it was not passing on that issue. The trial minutes reveal that the bar to any discussion between defendant and his attorney about his testimony was initially established by the court on the morning of June 14 after his direct examination had proceeded for 62 pages of the record. It was again repeated and continued on that same date, before the luncheon recess. Near the conclusion of defendant's cross-examination on that day, the Assistant District Attorney asked the defendant: "Do you recall speaking to someone in Bonnanne's Bar and telling him that you had killed somebody on Christmas Eve?"

An objection to the question was made. The Assistant District Attorney produced a tape recording of a 911 telephone call to the police and a transcript of such conversation. The court then reserved decision on the objection and recessed for the day. At the opening of court on June 15, a side-bar conference ensued in relation to the propriety of the question and further argument was heard. The court then ruled that the question was proper and informed the Assistant District Attorney that he would be bound by defendant's answers. As the side-bar conference was about to end, defendant's counsel requested an opportunity to speak to his client. The application was denied by the Trial Justice, who stated: "Not while he's testifying." However, he was not then testifying, nor had he yet taken the witness stand. The defendant was then directed to step up to the witness chair, and his cross-examination resumed. The clerk's docket reveals that court opened at 9:35 A.M., and the jury did not enter the jury box until 10:05 A.M. Defendant's cross-examination continued for some 22 pages during which many questions were asked in relation to matters other than the question upon which the court had ruled after reserving decision on the previous day. This cross-examination continued until the court announced that it would take a 15-minute recess. At this point, the Assistant District Attorney stated that he proposed to have the transcript of the tape-recorded conversation marked for identification at the conclusion of defendant's cross-examination. Before the Trial Justice left the court, another request by defendant's counsel for permission to "speak with my client during the recess" was denied and an exception was taken. At the conclusion of the recess there was another side-bar conference in which the court was requested to pass upon the propriety of the questions by the Assistant District Attorney based on defendant's responses to a psychiatrist appointed by the court pursuant to CPL 730.20 (subd 6). After ruling that such questions were inappropriate, the court addressed defendant's attorney and stated:

"THE COURT: You made an application. You want to talk to your client?

"While I have these rulings to make, and I reserve [sic] decision last night on a question of whether the District Attorney was going to — withdrawn.

"The District Attorney had a basis for asking the questions, I said you can't talk to him. While I was researching my decision, while this questioning was going on, I said you can't talk to him. I think I am right.

"Now, I have made my determination here you can talk to him. If you want to talk to him now before he gets back on the stand, you want to talk to him?

"MR. LOMBARDINO [defense counsel]: He has some questions he wanted to ask me.

"THE COURT: Go ahead. I want the record to reflect that."

Thus, from a total shutoff of all communication between attorney and client regarding his testimony which began during defendant's direct examination, the court later took the inconsistent position that such communication may resume during the remainder of his questioning, justifying the ban "[w]hile I was researching my decision". Although the transcript of the 911 police tape recording was marked for identification after both sides had rested, defendant was never asked by the Assistant District Attorney the question to which an objection had been made and which required the court's research following the recess on June 14. It is obvious, therefore, that we are not here concerned with a brief recess ban on communication, nor consultation resulting in interference with orderly court procedure. The bar had been imposed the day before. True, that particular error was not preserved, but upon application by defendant's attorney on the morning of June 15, after the court opened at 9:35 A.M., where the defendant was not yet on the witness stand, the jury was not in the box, and the court had already completed its research and ruled on the question, it

was a violation of defendant's right to counsel to refuse him access to his lawyer until the defendant had been subjected to further cross-examination by the Assistant District Attorney on matters unrelated to the question which had been researched and ruled upon, and, then, not until after a further recess and further colloquy. Clearly, we have here more than a brief recess ban on attorney-client communications, and we are not dealing with a situation involving withdrawal of a defendant from the witness stand to counsel him. The court may not, while claiming to be researching a question of law, permit the trial to continue and, at the same time, forbid the defendant and his counsel to confer. This, in my opinion, is neither an acceptable method of preserving the orderly processes of the trial, nor is it, under the prevailing circumstances, merely a brief interruption of defendant's constitutional right to counsel. Consonant with the mainstream of the law following *Geders v United States* (425 US 80), the courts have repeatedly refused to permit the deprivation of the right to counsel for even "short, mid-day recesses". In *United States v Conway* (632 F2d 641, 643-644), the court held: "The constitutionality of a sequestration order that spanned a greater length of time was before the Supreme Court in *Geders v. United States,* 425 U.S. 80 * * * *rev'g United States v. Fink,* 502 F.2d 1 (5th Cir. 1974). In *Geders* the Court held that a criminal defendant's Sixth Amendment right to counsel was denied by a district court order barring consulation between the defendant and his attorney during an overnight recess that fell between the direct examination and the cross-examination of the defendant. The Court, however, expressly noted that it was not considering an order that merely barred a defendant from consulting his attorney during a brief routine recess during the trial day. *Geders, supra,* 425 U.S. at 89 n. 2 * * * Nevertheless, a number of Circuits have either adopted or expressed approval of the extension of *Geders to short, mid-day recesses. United States v. Bryant,* 545 F2d 1035 (6th Cir. 1976) (holding an order directing defendant not to converse with anyone during an hour lunch break violative of the Sixth Amendment right to counsel); *United States v. Allen,* 542 F.2d 630 (4th Cir. 1976), *cert. denied,* 430 U.S. 908 * * * (holding that a restriction on a defendant's right to consult with his attorney during two brief routine recesses, one 20 minutes and the other 'a minute', is constitutionally impermissible); see *United States v. Vesaas,* 586 F.2d 101, 102 n. 2 (8th Cir. 1978) (dicta that the court has 'grave doubts that even a brief restriction on a criminal defendant's right to confer with counsel can be squared with the Sixth Amendment') * * * The basis of the *Geders* decision, and likewise the basis of this decision, is the Sixth Amendment, which provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of Counsel for his defence.' U.S. Const. amend. VI. The importance of the Sixth Amendment right to counsel is well recognized. *Geders, supra,* 425 U.S. at 88-89 * * * *Argersinger v. Hamlin,* 407 U.S. 25, 31-36 * * * *Gideon v. Wainwright,* 372 U.S. 335, 343-45 * * * *Powell, supra,* 287 U.S. at 68-69 * * * It cannot be disputed that '[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel . . . . [A defendant] requires the guiding hand of counsel at every step in the proceedings against him.' *Powell, supra,* 287 U.S. at 68-69". (Emphasis supplied.)