Suraj NARAYAN, Petitioner,

v.

Charles SCULLY, Superintendent of Greenhaven Correctional Facility, Robert Abrams, Attorney General, New York State, and John Santucci, Queens County District Attorney, Respondents.

No. CV–89–3859.

United States District Court, E.D. New York.

July 11, 1990.

Stanley Neustadter, New York City, for petitioner.

Stephanie Schwartz, Asst. Dist. Atty., Kew Gardens, N.Y., for respondents.

MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied in its entirety.

Petitioner was convicted, after a jury trial, of Murder in the Second Degree. He was sentenced by the Supreme Court, Queens County, to 25 years to life in prison. Petitioner appealed his conviction, and the Appellate Division reversed. *People v. Narayan*, 76 A.D.2d 604, 431 N.Y.S.2d 556 (2d Dept.1980). The Court of Appeals, however, reversed the Appellate Division, and remanded the case for further proceedings. *People v. Narayan*, 54 N.Y.2d 106, 444 N.Y.S.2d 604, 429 N.E.2d .123 (1981). Upon reconsideration, the Appellate Division affirmed Petitioner's conviction. *People v. Narayan*, 88 A.D.2d 622, 449 N.Y.

59. SD 37–38. *See also* 104.

S.2d 1008 (2d Dept.1982). The Court of Appeals subsequently affirmed that decision. *People v. Narayan*, 58 N.Y.2d 904, 460 N.Y.S.2d 503, 447 N.E.2d 51 (1983).

Petitioner then filed this petition, which raises only one ground. Petitioner claims that he was denied the assistance of counsel, in violation of his Sixth Amendment rights.

### Facts

Between 12:30 A.M. and 12:45 A.M. on December 25, 1974, Petitioner was seen entering Sandra Zahler's building in Kew Gardens, Queens, and walking towards her apartment. He was wearing a dark leather coat, and leading Ms. Zahler's dog on a leash.

At 3:20 A.M., the sounds of a fight were heard coming from Ms. Zahler's apartment. Five minutes later, her door was heard to open, and a man heard to leave by way of the stairs.

At approximately 4:00 A.M., Petitioner entered the Bonnanne Pub at 88th Street and Third Avenue in Manhattan. He was wearing a brown leather jacket, and appeared shaken, and roughed-up as though he had been in a fight. He began drinking, and remained at the Pub for some time.

At approximately 1:30 P.M. on December 26, George Boguslaw, Ms. Zahler's boyfriend, went to the apartment and opened the door with a key she had given him months before. He found her half on the couch, covered with vomit and blood, and called the police. The police arrived to find the apartment spattered with blood. An autopsy revealed that Ms. Zahler had been bludgeoned to death.

After the police arrested Petitioner, they searched his apartment and found a brown leather jacket stained with blood and other grayish and whitish matter of human origin, as well as blood-stained shoes. Tests revealed that the blood was type A; Petitioner's blood was type B. Fingerprints matching Petitioner's were found in Ms. Zahler's apartment, on the kitchen wall and on a bottle of liquor found on her stove.

Petitioner testified that he had left Ms. Zahler's apartment at 12:05 A.M., and did not return until 5:00 A.M. the next day (December 26). He was wearing his leather jacket. He knocked on Ms. Zahler's door, and, getting no answer, turned the knob, finding the door unlocked. He entered the apartment and found Ms. Zahler on the couch. He picked her up and tried to revive her, getting blood on his jacket. He ran out of the building, by way of the stairs. He called 911 from a phone booth on Queens Boulevard, but panicked and hung up when asked his name.

### Trial

On June 14th, Petitioner took the stand in his own defense. During his direct examination, the trial judge declared a brief recess, and (out of the presence of the jury) admonished Petitioner and his attorney as follows:

[to defense attorney Lombardino] "Don't talk to him about his testimony." [to Petitioner] "Don't talk to Mr. Lombardino about your testimony, you understand that?"

Petitioner resumed the stand after the recess. When the judge declared a lunch recess, he stated (out of the presence of the jury):

"The defendant is remanded. Don't discuss your testimony."

Cross examination began after lunch, and continued throughout the rest of the day. Finally, the prosecutor asked Petitioner:

"Do you recall speaking with somebody in Bonanne's Bar and telling him that you had killed somebody on Christmas Eve?"

Petitioner's attorney objected to the question, and the judge called a recess until the next day, reserving ruling on the objection. The trial judge made no statements to Petitioner or his attorney concerning their ability to talk to each other during the overnight recess.

The next day (June 15th), after the judge heard argument on the objection and decided that the question was proper, the following colloquy occurred:

Mr. Lombardino: "I would like to place something on the record. I have a legal point to make."

Prosecutor: "May we have it at sidebar?"

The Court: "He is on the stand."

Mr. Lombardino: "May I say an attorney has the right to speak to his client at all stages of the proceedings."

The Court: "Not while he's testifying."

Mr. Lombardino: "I respectfully except and I respectfully submit I am being denied the right to consult with my—the defendant is being denied the right to consult with counsel."

The Court: "Step up."

(Defendant resumed stand.)

Court Officer: "You are still under oath, Mr. Narayan."

The Court: "All right, no further applications. Bring in the jury please."

When cross examination resumed, the prosecutor pursued the following line of inquiry:

Prosecutor: "Mr. Narayan, after you left court yesterday afternoon, did you have a conversation with your lawyer?"

Mr. Lombardino: "I object."

The Court: "Overruled."

Mr. Narayan: "Yes, sir."

Prosecutor: "How long did you speak with him?"

Mr. Lombardino: "I object."

The Court: "Overruled."

Mr. Narayan: "A few minutes."

Later on during cross examination, the following exchange took place:

Prosecutor: "You discussed this case with your lawyer?"

Mr. Narayan: "My lawyer told me to."

Prosecutor: "To ask me that question?"

Mr. Narayan: "Be polite and relax."

Cross-examination continued, until the trial judge called a 15 minute recess. After the jury left, the following exchange occurred:

Mr. Lombardino: "Again, I would like to have the Court's permission to speak with my client during the recess."

The Court: "Overruled."

Mr. Lombardino: "Respectfully except. Let the record indicate he's still on cross and he's being denied an opportunity to speak with me during the recess."

The Court: "Let the record so indicate."

Shortly after the recess, at the end of a sidebar concerning another issue, the following exchange took place:

The Court: "You made an application. You want to talk to your client? While I have these rulings to make, and I reserve decision last night on a question of whether the district attorney was going to—withdrawn—the district attorney had a basis for asking the questions. I said you can't talk to him. While I was researching my decision, while this questioning was going on, I said you can't talk to him. I think I am right. Now, I have made my determination here you can talk to him. If you want to talk to him now before he gets back on the stand, you want to talk to him?"

Mr. Lombardino: "He has some questions he wanted to ask me."

The Court: "Go ahead. I want the record to reflect that."

On re-direct, Petitioner was examined as follows:

Mr. Lombardino: "Bobby, did you speak with me last night?"

Mr. Narayan: "Yes, sir."

Mr. Lombardino: "At the end of the court day, did you speak to me after court was over?"

Mr. Narayan: "Not business."

Mr. Lombardino: "All right. Now were you unable to speak to me?"

Prosecutor: "Objection."

The Court: "Overruled."

Mr. Narayan "Yes, sir, because—"

Mr. Lombardino: "Why were you unable to speak to me?"

Mr. Narayan: "[The] court ordered no conversation regarding my testimony."

### Discussion

#### I. The Night of June 14th–15th

██ "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto.'" *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 2043, 103 L.Ed.2d 308 (1989). As to the June 14th–15th "ban," the New York Court of Appeals " 'clearly and expressly' stat[ed] that its judgment [rejecting Petitioner's claim] rest[ed] on a state procedural bar." *Id.* Petitioner failed to object to the "ban" on the 14th, and has made no showing of "cause" for the failure to raise a contemporaneous objection.

Petitioner argues that this court may disregard the procedural bar on the ground that it is not "strictly and regularly followed" by the New York courts. *Hathorn v. Lovorn,* 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982). Petitioner points to a long line of New York cases holding that a claim of the denial of the right to counsel may be considered upon appeal despite a lack of objection at trial. *See, e.g., People v. Arthur,* 22 N.Y.S.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968); *People v. Ermo,* 47 N.Y.2d 863, 419 N.Y. S.2d 65, 392 N.E.2d 1248 (1979).

The Court of Appeals clearly distinguished that line of cases in its opinion. In the instant case, unlike those presented by Petitioner, the alleged deprivation took place at trial, when Petitioner's attorney was present and fully able to register any objection he deemed appropriate. Thus the Court stated that:

> "[w]ithout in any way depreciating the stature of the constitutionally protected right of a criminal defendant effectively to confer with counsel and not to be deprived of the right for any substantial period of time (*Geders v. United States,* 425 U.S. 80 [96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)]), we find no justification for departing from the requirement that trial

court error (here interference with that right) must be brought to the court's attention by protest timely made, *at least where counsel acting on defendant's behalf is present and available to register a protest and where the error if called to the court's attentnion [sic] is readily susceptible to effective remedy.*

*People v. Narayan,* 54 N.Y.2d 106, 112, 444 N.Y.S.2d 604, 429 N.E.2d 123 (1981) (emphasis added).

The logic behind this distinction is readily apparent. Where the alleged deprivation of the right to counsel occurs at a time when the defendant is unrepresented, it would be absurd to require that such an unassisted party register a contemporaneous objection. Similarly, a requirement that the deprivation later be objected to at trial, when the defendant *is* represented by counsel, would not serve the end of providing the trial judge an opportunity to avoid the deprivation in the first instance.

In contrast, the instant case provides an excellent example of the values served by respecting the contemporaneous objection rule. Had Petitioner's attorney objected to the "overnight ban" on communication at the close of court on the 14th, there is every reason to expect that the trial judge would have clarified the fact that his earlier instructions were not meant to extend beyond the end of that day's session. Indeed, the fact that the trial judge repeated his instructions when calling the lunch recess on June 14th suggests that he did not expect instructions given at the time a recess was called to remain in effect indefinitely. His failure to repeat the instruction at the end of the court day is therefore a further indication that he did not intend to preclude Petitioner from consulting with his attorney overnight. If, on the other hand, the trial judge *had* nevertheless clearly imposed an overnight ban in response to an objection registered at the end of the June 14th session, the question of procedural bar would never have arisen.

Petitioner's argument that *Narayan* is the only case in which the Court of Appeals has made the distinction discussed above is

unpersuasive. The circumstances of this case are unusual compared to those found in the cases presented by Petitioner. It is therefore unsurprising that the Court of Appeals has not had another opportunity to rule on this precise question of law. The distinction is not irrational, however, for the reasons laid out above. Nor is *People v. Hilliard*, 73 N.Y.2d 584, 542 N.Y.S.2d 507, 540 N.E.2d 702 (1989), cited by Petitioner, to the contrary. In *Hilliard*, as in the other cases pressed by Petitioner, the alleged deprivation occurred well before trial.

Finally, the court finds no merit in Petitioner's argument that the contemporaneous objection rule was not "clearly announced." *Henry v. Mississippi*, 379 U.S. 443, 448 n. 3, 85 S.Ct. 564, 567 n. 3, 13 L.Ed.2d 408 (1965). The rule is one of long standing in the New York courts. It strains belief to suggest that the failure of Petitioner's attorney to register a contemporaneous objection was prompted by his reliance on the belief that his client's right to challenge the ruling on habeas review would nonetheless be preserved.

For all of the above reasons, the court finds that Petitioner's claim, as it relates to the night of June 14th–15th, is procedurally barred.

## II. June 15th

Petitioner also claims that the trial judge's refusal to allow his attorney to converse with him on June 15 until the prosecution had completed its cross examination of him violated his right to assistance of counsel. He cites *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), which held that a trial judge's refusal to allow a criminal defendant to consult with his lawyer during an overnight recess constituted a violation of the Sixth Amendment. Since *Geders*, however, the Supreme Court has decided *Perry v. Leeke*, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), which holds that the denial of the ability to consult with an attorney during a short trial recess during the defendant's testimony does *not* violate the Sixth Amendment.

The Court distinguished *Perry* from *Geders* as follows:

The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess.... But in a short recess, in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice.

109 S.Ct. at 602.

Here, the prosecution was in the middle of Petitioner's cross examination when his attorney requested to speak with him. Once that cross examination was completed (no more than an hour, by Petitioner's own admission) the judge allowed Petitioner and his attorney to consult. The only difference between having been allowed to converse at the time Petitioner's attorney requested it and the time the trial judge allowed it would have been the ability to discuss Petitioner's testimony. Any other matters could have been addressed just as fully after the cross examination had been completed. The court therefore concludes that this case falls under *Perry* rather than *Geders*. Since "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying," *Id.* at 600, no constitutional error was committed at Petitioner's trial.

## III. Summary

For all of the above reasons, the petition is denied in its entirety.

SO ORDERED.