# GEDERS *v.* UNITED STATES

No. 74–5968.   Argued December 1, 1975—Decided March 30, 1976´

Burger, C. J., delivered the opinion of the Court, in which all Members joined except Stevens, J., who took no part in the consideration or decision of the case. Marshall, J., filed a concurring opinion, in which Brennan, J., joined, *post*, p. 92.

*Seymour L. Honig* argued the cause and filed a brief for petitioner.

*Sidney M. Glazer* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Thornburgh, John P. Rupp, Victor Stone,* and *Lauren S. Kahn.*

Mr. Chief Justice Burger delivered the opinion of the Court.

We granted certiorari to consider whether a trial court's order directing petitioner, the defendant in a federal prosecution, not to consult his attorney during a regular overnight recess, called while petitioner was on the stand as a witness and shortly before cross-examination was to begin, deprived him of the assistance of counsel in violation of the Sixth Amendment.

A grand jury in the Middle District of Florida returned indictments charging petitioner and several codefendants with conspiracy to import and illegal importation of a controlled substance into the United States, in violation of 18 U. S. C. § 371 and 21 U. S. C. § 952 (a), and with possession of marihuana,

in violation of 21 U. S. C. § 841 (a). The charges grew out of plans for several of the defendants to fly about 1,000 pounds of marihuana from Colombia into the United States, plans that might have succeeded but for the fact that the pilot of the charter plane informed the United States Customs Service of the arrangements.

The trial of petitioner and one codefendant commenced on Tuesday, October 9, 1973. Petitioner testified in his own defense on Tuesday, October 16, and Wednesday, October 17. Petitioner's counsel concluded direct examination at 4:55 p. m. Tuesday. When the court recessed for the night, and after the jury departed, the prosecutor asked the judge to instruct petitioner not to discuss the case overnight with anyone. Throughout the trial, the judge had given the same instruction to every witness whose testimony was interrupted by a recess.

Petitioner's attorney objected, explaining that he believed he had a right to confer with his client about matters other than the imminent cross-examination, and that he wished to discuss problems relating to the trial with his client. The judge indicated his confidence that counsel would properly confine the discussion, but expressed some doubt that petitioner would be able to do so, saying: "I think he would understand it if I told him just not to talk to you; and I just think it is better that he not talk to you about anything." The judge suggested that counsel could have an opportunity immediately after the recess to discuss with his client matters other than the cross-examination, such as what witnesses were to be called the next day, and he indicated that he would grant a recess the next day so that counsel could consult with petitioner after petitioner's testimony ended. Counsel persisted in his

objection, although he appropriately indicated that he would—as in fact he did—comply with the court's order.[1]

When court convened the next morning, petitioner's

---

[1] The discussion among the judge, petitioner's attorney (Mr. Rinehart), and the prosecutor (Mr. Blasingame), summarized in the text, was:

"MR. BLASINGAME: Has this witness been instructed now that he is not to talk to anyone whatsoever, including his attorneys—or anyone—about this case at all?

"MR. RINEHART: If he were instructed not to talk to his attorney, I feel that it would be improper. I think I always have the right to talk to my client.

"MR. BLASINGAME: I don't think so.

"THE COURT: Well I don't know whether you requested that I so instruct another witness when there was a recess, to that effect; but you do—let's make this clear—you always have the right to talk to your client—but except for the accident—and 'accident' means something over which you have no control—the cross-examination would have been right now and you would not have had an opportunity to talk to him.

"Now, because of the fact that it is 5:00 o'clock and we are recessing until tomorrow, you would have that opportunity.

"If you had requested the opportunity and this had been 2:00 o'clock—and if you had said 'If the Court please, I would like to have a recess'—and then, outside the presence of the Jury, had said, 'because I want to talk to my client'; what would I have said?

"MR. RINEHART: You probably would not have granted the recess, Your Honor.

"THE COURT: Should I have?

"MR. RINEHART: Not if there was something else to do, Your Honor.

"THE COURT: Well would you have had a right to just talk to your client while he is subject to cross-examination?

"MR. RINEHART: Well I would not—·

"THE COURT: Would you have?

"MR. RINEHART: I would not instruct my client anyway.

"THE COURT: Well would you have talked to him? Would

attorney asked and received permission to reopen his direct examination of petitioner. The cross-examination which followed was finished in the morning; the judge

you have had a right to confer with him? That is what I want to know.

"MR. RINEHART: If there were matters that I felt I had not brought out on Direct and that I should have covered—

"THE COURT: Before he is cross-examined?

"MR. RINEHART: Even before he is cross-examined. Sometimes we remember things we did not—

"THE COURT: Yes, sir. That is the reason you are entitled to Re-direct.

"MR. RINEHART: Right.

"THE COURT: Now I would appreciate it if you would answer my question. We have had a little trouble about being responsive.

"MR. RINEHART: All right.

"THE COURT: My question is: While a witness is subject to cross-examination, even though he is a defendant, does his attorney have the right to confer with him before he is cross-examined?

"You have been practicing law for a long time.

"MR. RINEHART: I feel that I do have the right to confer with him but not to coach him as to what he may say on cross-examination or how to answer questions.

"THE COURT: Then what else would you need to talk to him about?

"MR. RINEHART: I don't know. Such as whom should I call as the next witness.

"THE COURT: All right.

"MR. RINEHART: There are numerous strategic things that an attorney must confer with his client about.

"THE COURT: Well I don't have any questions, Mr. Rinehart, about what you—I think you are a disciplined man. I think you are trained in the law. And I think if you should tell me, for instance, that you would not discuss this direct testimony with your client I would accept that statement without any qualification.

"MR. RINEHART: Your Honor, I can assure you of that.

"THE COURT: I understand that. But your client, as far as I know, has not had any legal training; and I don't know anything about him other than what I have heard here today. And I don't

then called the luncheon recess. Petitioner—whose testimony on redirect examination was yet to come—was permitted to confer with his attorney during the noon recess. The trial concluded the following day, and petitioner was convicted on all three counts; he was sentenced to concurrent three-year prison terms.

The Court of Appeals affirmed petitioner's convic-

---

know that he is subject to that same instruction—that he would understand it.

"I think he would understand it if I told him just not to talk to you; and I just think it is better that he not talk to you about anything.

"I think you might ask him right now—right here while we are here—what witnesses he thinks you ought to call in the morning.

"Let's put it this way. You ask him right now if he thinks there are any witnesses you ought to call during the evening. If anything comes up after he has been cross-examined, and after you have had an opportunity for re-direct, we would have a recess and you would have all the time you need to talk to him about strategies or anything else. We will take the rest of this month, if necessary, to give you an opportunity and him an opportunity for a fair trial. But we are not going to let strategy take the place of this situation.

"And I have held that I find that I don't think you would do anything wrong; but I think it would be better, under the circumstances of this case. And that is my ruling.

"MR. RINEHART: If that is your ruling, Your Honor, we will obey it.

"THE COURT: All right. Now you just move to the side, please.

"Now, Mr. Geders, will you stand up. I direct you not to discuss your testimony in this case with anyone until you are back here tomorrow morning at 9:30 for the purpose of being cross-examined.

"Do you understand that?

"MR. GEDERS: I understand.

"THE COURT: All right, thank you. All right, the Court will be in recess." (Emphasis added.)

The ambiguity of this colloquy appears to be resolved by the direction that petitioner "not talk to you [counsel] about anything."

tion. *United States* v. *Fink,* 502 F. 2d 1 (CA5 1974). On the point here at issue, the court held that petitioner's failure to claim any prejudice resulting from his inability to consult with counsel during one evening of the trial was fatal to his appeal. In so holding, the court relied on *United States* v. *Leighton,* 386 F. 2d 822 (CA2 1967), cert. denied, 390 U. S. 1025 (1968), dealing with a similar order applied to a noon recess, and rejected the Third Circuit's position that prejudice need not be shown, *United States* v. *Venuto,* 182 F. 2d 519 (1950), in a case involving an overnight recess. The Court of Appeals also disposed of several other claims of error. We granted certiorari limited to petitioner's claim that the order forbidding consultation with his attorney overnight denied him the assistance of counsel in violation of the Sixth Amendment. 421 U. S. 929.

Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice. "[T]he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia* v. *United States,* 289 U. S. 466, 469 (1933). A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion. *Goldsby* v. *United States,* 160 U. S. 70, 74 (1895); *United States* v. *Martinez-Villanueva,* 463 F. 2d 1336 (CA9 1972); *Nelson* v. *United States,* 415 F. 2d 483, 487 (CA5 1969), cert. denied, 396 U. S. 1060 (1970). Within limits, the judge may control the scope of rebuttal testimony, *United States* v. *Chrzanowski,* 502 F. 2d 573, 575–576 (CA3 1974); *United*

*States* v. *Perez,* 491 F. 2d 167, 173 (CA9), cert. denied *sub nom. Lombera* v. *United States,* 419 U. S. 858 (1974); may refuse to allow cumulative, repetitive, or irrelevant testimony, *Hamling* v. *United States,* 418 U. S. 87, 127 (1974); *County of Macon* v. *Shores,* 97 U. S. 272 (1877); and may control the scope of examination of witnesses, *United States* v. *Nobles,* 422 U. S. 225, 231 (1975); *Glasser* v. *United States,* 315 U. S. 60, 83 (1942). If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings.

The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, during, and after their testimony. *Holder* v. *United States,* 150 U. S. 91, 92 (1893); *United States* v. *Robinson,* 502 F. 2d 894 (CA7 1974); *United States* v. *Eastwood,* 489 F. 2d 818, 821 (CA5 1974). Wigmore notes that centuries ago, the practice of sequestration of witnesses "already had in English practice an independent and continuous existence, even in the time of those earlier modes of trial which preceded the jury and were a part of our inheritance of the common Germanic law." 6 J. Wigmore, Evidence § 1837, p. 348 (3d ed., 1940). The aim of imposing "the rule on witnesses," as the practice of sequestering witnesses is sometimes called, is twofold. It exercises a restraint on witnesses "tailoring" their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid. See Wigmore, *supra,* § 1838; F. Wharton, Criminal Evidence § 405 (C. Torcia ed., 1972). Sequestering a witness over a recess called before testimony is completed serves a third purpose as well—preventing improper attempts to influence the testimony in light of the testimony already given.

The trial judge here sequestered all witnesses for both prosecution and defense and before each recess instructed

the testifying witness not to discuss his testimony with anyone. Applied to nonparty witnesses who were present to give evidence, the orders were within sound judicial discretion and are not challenged here.

But the petitioner was not simply a witness; he was also the defendant. A sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial. A nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial. Moreover, "the rule" accomplishes less when it is applied to the defendant rather than a nonparty witness, because the defendant as a matter of right can be and usually is present for all testimony and has the opportunity to discuss his testimony with his attorney up to the time he takes the witness stand.

The recess at issue was only one of many called during a trial that continued over 10 calendar days. But it was an overnight recess, 17 hours long. It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to

be heard by counsel. . . . [A defendant] is unfamiliar with the rules of evidence. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he [may] have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him." *Powell* v. *Alabama,* 287 U. S. 45, 68–69 (1932).

See also *Argersinger* v. *Hamlin,* 407 U. S. 25, 31–36 (1972); *Gideon* v. *Wainwright,* 372 U. S. 335, 343–345. (1963). Other courts have concluded that an order preventing a defendant from consulting his attorney during an overnight recess infringes upon this substantial right. See *United States* v. *Venuto,* 182 F. 2d 519 (CA3 1950); *People* v. *Noble,* 42 Ill. 2d 425, 248 N. E. 2d 96 (1969); *Commonwealth* v. *Werner,* 206 Pa. Super. 498, 214 A. 2d 276 (1965). But see *People* v. *Prevost,* 219 Mich. 233, 189 N. W. 92 (1922).[2]

There are other ways to deal with the problem of possible improper influence on testimony or "coaching" of a witness short of putting a barrier between client and counsel for so long a period as 17 hours. The opposing counsel in the adversary system is not without weapons to cope with "coached" witnesses. A prosecutor may cross-examine a defendant as to the extent of any "coaching" during a recess, subject, of course, to the control of the court. Skillful cross-examination could de-

---

[2] *United States* v. *Leighton,* 386 F. 2d 822 (CA2 1967), on which the Court of Appeals relied, involved an embargo order preventing a defendant from consulting his attorney during a brief routine recess during the trial day, a matter we emphasize is not before us in this case. See *United States* v. *Schrimsher,* 493 F. 2d 848 (CA5 1974); *United States* v. *Crutcher,* 405 F. 2d 239 (CA2 1968), cert. denied, 394 U. S. 908 (1969); see also *Krull* v.´*United States,* 240 F. 2d 122 (CA5), cert. denied, 353 U. S. 915 (1957). Cf. *Pendergraft* v. *State,* 191 So. 2d 830 (Miss. 1966).

velop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination. In addition the trial judge, if he doubts that defense counsel will observe the ethical limits on guiding witnesses,[3] may direct that the examination of the witness continue without interruption until completed. If the judge considers the risk high he may arrange the sequence of testimony so that direct- and cross-examination of a witness will be completed without interruption. That this would not be feasible in some cases due to the length

---

[3] An attorney must respect the important ethical distinction between discussing testimony and seeking improperly to influence it. Ethical Consideration 7–26 of the American Bar Association Code of Professional Responsibility (1975) states:

"The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline. A lawyer should, however, present any admissible evidence his client desires to have presented unless he knows, or from facts within his knowledge should know, that such testimony or evidence is false, fraudulent, or perjured."

Disciplinary Rule 7–102 of the Code provides in relevant part:

"(A) In his representation of a client, a lawyer shall not:

.    .    .    .    .

"(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

"(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

Any violation of these strictures would constitute a most serious breach of the attorney's duty to the court, to be treated accordingly.

We note that the judge expressed full confidence that petitioner's trial attorney would respect the difference between assistance and improper influence.

of direct- and cross-examination does not alter the availability, in most cases, of a solution that does not cut off communication for so long a period as presented by this record. Inconvenience to the parties, witnesses, counsel, and court personnel may occasionally result if a luncheon or other recess is postponed or if a court continues in session several hours beyond the normal adjournment hour. In this day of crowded dockets, courts must frequently sit through and beyond normal recess; convenience occasionally must yield to concern for the integrity of the trial itself.

There are a variety of ways to further the purpose served by sequestration without placing a sustained barrier to communication between a defendant and his lawyer. To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel. *Brooks* v. *Tennessee,* 406 U. S. 605 (1972).

The challenged order prevented petitioner from consulting his attorney during a 17-hour overnight recess, when an accused would normally confer with counsel. We need not reach, and we do not deal with, limitations imposed in other circumstances. We hold that an order preventing petitioner from consulting his counsel "about anything" during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals, with directions that it be remanded to the

District Court for proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, concurring.

I join in most of the Court's opinion, and I agree with its conclusion that an order preventing a defendant from consulting with his attorney during an overnight recess violates the defendant's Sixth Amendment right to counsel.

The Court notes that this case does not involve an order barring communication between defendant and counsel during a "brief routine recess during the trial day." [1] *Ante,* at 89 n. 2. That is, of course, true. I would add, however, that I do not understand the Court's observation as suggesting that as a general rule no constitutional infirmity would inhere in an order barring communication between a defendant and his attorney during a "brief routine recess." In my view, the general principles adopted by the Court today are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial.

Thus, as the Court holds, a defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice. Such an

---

[1] I would assume, however, that the Court's repeated reference to the length of the overnight recess in this case—17 hours—is not intended to have any dispositive significance, and that the Court's holding is at least broad enough to cover all overnight recesses.

order is inherently suspect, and requires initial justification by the Government.

The only justification expressly considered by the Court in its opinion is the desire to avoid the risk of unethical counseling by an attorney.[2] The Court holds that the fear of unethical conduct is not a sufficient ground for an order barring overnight communication between a defendant and his attorney, and the same would hold true absent the most unusual circumstances, I take it, for an order barring consultation between a defendant and his attorney at *any* time before or during the trial.[3] If our adversary system is to function according to design, we must assume that an attorney will observe his responsibilities to the legal system, as well as to his client. I find it difficult to conceive of any circumstances that would justify a court's limiting the attorney's opportunity to serve his client because of fear that he may disserve the system by violating accepted ethical standards. If any order barring communication between a defendant and his attorney is to survive constitutional inquiry, it must be for some reason other than a fear of unethical conduct.

---

[2] For the distinction between ethical and unethical counseling, see *ante,* at 90 n. 3.

[3] The Court suggests, however, that "doubts that defense counsel will observe the ethical limits on guiding witnesses" would justify such actions as postponing the luncheon recess or extending the normal adjournment hour in order to complete the defendant's testimony. *Ante,* at 90–91. I would assume that trial courts generally take such steps out of a desire to move the trial along in an orderly and expeditious fashion, not out of fear that defense counsel might exceed the bounds of ethical conduct if given the opportunity. And I am unwilling to endorse the notion that where the orderly and expeditious progress of the trial would not be served, the trial court should nevertheless feel free to continue the defendant's testimony without interruption because of a belief that defense counsel is likely to act unethically.