**UNITED STATES of America,**

v.

**Angel TORRES, Defendant.**

**Nos. CRIM.A. 90–512 (RCL),
CIV.A. 96–2037 (RCL).**

United States District Court,
District of Columbia.

Sept. 1, 1999.

Joan Draper, Asst. U.S. Atty., United States Attorney's Office, Washington, DC, for U.S.

Santa Sonenberg, Reita Pendry, Federal Public Defender's Office, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the Court on defendant Angel Torres' motion to vacate, set aside, or correct the sentence in his case pursuant to 28 U.S.C. § 2255. Upon consideration of the motion, the government's opposition, the record in this case, and the evidence and argument of counsel, the motion will be denied.

## II. BACKGROUND

### A. *Initial Proceedings*

Defendant Torres was indicted on November 20, 1990, for two counts of possession with intent to distribute illegal narcotics in violation of 21 U.S.C. § 841(a)(1). He was appointed counsel, Ms. Abbe Jolles, and entered a plea of not guilty on November 30, 1990. Rather than plead guilty and cooperate with a government investigation, Torres opted to proceed to a trial, which commenced in January of 1991. On January 29, 1991, the second day of trial, Torres failed to appear in court. This Court determined that Torres had voluntarily absconded from the trial, issued a bench warrant for his arrest, and proceeded with the trial in his absence. The jury found Torres guilty on both counts of possession with intent to distribute on January 30, 1991.

More than three years later, on July 14, 1994, the bench warrant was executed and Torres was again taken into federal custody.

Another year later, on July 31, 1995, Torres filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Torres claimed that, although there was an interpreter present during all proceedings before the Court, the failure by his counsel (who spoke no Spanish) to retain an interpreter for lawyer-client communications outside of the courtroom denied him meaningful participation in his defense. The Court held a hearing on September 21, 1995 and, in a decision issued February 23, 1996, denied the motion as untimely, stating that the ineffective assistance of counsel claim could be properly raised in a motion pursuant to 28 U.S.C. § 2255. *See United States v. Torres,* 917 F.Supp. 29 (D.D.C. 1996), *aff'd,* 115 F.3d 1033 (D.C.Cir.1997).

On March 20, 1996, this Court sentenced Torres to a period of incarceration of 235 months, to be followed by a five-year term of supervised release.

### B. *Motion to Vacate Pursuant to 28 U.S.C. § 2255*

On August 30, 1996, defendant filed the current motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court ordered the United States to respond on November 15, 1996, and the government's opposition was filed December 16, 1996. After disposition of defendant's appeal of the denial of a new trial, the Court held a hearing on the § 2255 motion on January 7, 1998.

At the January 7, 1998 hearing, defendant produced one witness: Charles Stanfield, an expert in second-language proficiency testing. The government produced three witnesses: Lawrence Coates, the officer who arrested Torres; Janice Bergin, the pretrial services employee who prepared Torres' bond report; and Abbe Jolles, Torres' trial counsel.

#### 1. Charles Stansfield

Doctor Stansfield is a specialist in second-language proficiency testing. His expertise was not challenged by the government, and this Court accepts him as well qualified to render an opinion as to defendant's English-language ability at the time Dr. Stansfield interviewed and evaluated Torres on February 15, 1995.

At the February 15, 1995 evaluation, Dr. Stansfield met with Torres in prison and administered an oral proficiency examina-

tion to determine Torres's speaking and listening abilities in English. Based on that examination, Dr. Stansfield scored Torres's abilities using the American Council on Teaching a Foreign Language (ACTFL) Proficiency Guidelines.

Dr. Stansfield testified that, at the time of the February 15, 1995 interview, he had determined Torres's English-language ability to be at the novice-mid level for both speaking and listening, with the exception that Torres could speak at a novice-high level on matters relating to his legal situation. See Tr. at 22. Dr. Stansfield explained that at the novice-mid level a person would tend to have a vocabulary of at least seventy-five words and a rudimentary awareness of grammar and syntax. See id. at 25. At the novice-high level, the doctor testified, "a person is trying to speak in sentences, but most of the sentences fail grammatically, or often—the person often fails to make a grammatically correct sentence, and sometimes a sentence even fails to communicate themselves [sic]." Id. at 25–26. With regard to listening comprehension, Dr. Stansfield gave the description of the novice-mid level of ability: "'Able to understand some short, learned utterances, particularly where context strongly supports understanding and speech is clearly audible. Comprehends some words and phrases from simple questions, high-frequency commands and courtesy formulae'—thank you, you're welcome—'about topics that refer to basic personal information or the immediate physical setting.'" Id. at 38.

When asked what level of proficiency would be required to effectively communicate with a lawyer, Dr. Stansfield stated that, in his opinion, an intermediate-high level would be the minimum. See id. at 41. Specifically with regard to understanding an attorney's explanation of more abstract concepts such as guilty pleas, sentencing guidelines, et cetera, Dr. Stansfield opined that an advanced high or superior level would be required. See id. at 43.

On cross-examination, Dr. Stansfield testified that, although he considered his rating of Torres to be reliable and objective, all oral proficiency testing contains some element of subjectivity. He also testified that Torres's oral proficiency in English, both as a speaker and as a listener, would have been aided by repetition, explanation, and body language and other nonverbal expression. See id. at 63. Likewise, the witness opined that counsel's access to the prosecutor, to police reports, and to other sources of information would assist in the communication between Torres and his attorney. See id. at 64. Moreover, Dr. Stansfield testified that, at the February 15, 1995 evaluation, Torres was able to seek clarification in those instances in which his comprehension was imperfect. See id. at 65–66. Finally, Dr. Stansfield stated that "the more contacts and the more rapport that's established, all of those things facilitate communication" between two persons, such as between Torres and Jolles. See id. at 66.

### 2. Lawrence Coates

The government's first witness at the evidentiary hearing was Lawrence Coates, a retired Metropolitan Police Officer currently employed by the United States Marshal's Office. At the time of Torres's arrest, Officer Coates was with the Narcotics and Special Investigations Division, detailed to a drug interdiction team. Officer Coates interacted with Torres on two separate occasions, during the second of which Officer Coates arrested Torres.

Officer Coates testified that, on March 16, 1990, he had occasion to interview defendant at Union Station in Washington, D.C. Torres was with two individuals who were arrested, and Officer Coates spoke with Torres for approximately ten minutes. See id. at 77. The two men spoke in English only (Coates does not speak Spanish), and Officer Coates testified that Torres gave no indication that he did not understand the conversation. See id. According to Officer Coates, Torres "was

very cool and he—he was a very cool individual and spoke very softly and completely. In my impression, in my opinion, he understood." *Id.*

Officer Coates' second interaction with Torres was on October 25, 1990 near the bus station in Washington, D.C. On that occasion, Officer Coates again approached Torres and spoke to him in English. *See id.* at 80. Although Torres gave a different name than the last time he had encountered Coates,[1] the officer recognized him. *See id.* After receiving a prearranged signal from an officer interviewing a woman later identified as Torres's accomplice, Officer Coates arrested Torres. *See id.*

After the arrest, Officer Coates accompanied Torres to the police station, where Coates prepared a Form 163 containing Torres's basic personal information. *See id.* Officer Coates obtained the information for the 163 by interviewing Torres in English, and he testified that Torres gave no indication that he did not understand the conversation. *See id.* at 81.

### 3. Janice Bergin

The government's second witness was Janice Bergin, an employee with the District of Columbia pretrial services agency since 1972. Ms. Bergin testified that it was her practice, when a detainee did not have English as a first language or sufficient English-language ability for her to conduct the required investigative interview, to request that another employee conduct the interview in the detainee's native language or to conduct the interview with the aid of an interpreter. *See id.* at 86. Refreshing her recollection with documents prepared in connection with Torres's pretrial investigation, Ms. Bergin testified that she conducted the interview of Torres herself; the records gave no indication that an interpreter had been present.

Computer printouts from the pretrial services database also showed that Ms. Bergin had not noted Torres as presenting an "A5" appearance problem—the code for a non-English speaker. *See id.* at 96. Ms. Bergin testified that the lack of such a designation indicated that Torres spoke English. *See id.*

The database records also reflected that pretrial services had not opted to send Torres notification letters in Spanish, although such a service was available. *See id.* at 97. According to Ms. Bergin, this indicated that such Spanish-language notification was unnecessary because the recipient spoke English. *See id.*

Finally, Ms. Bergin testified that she did not include in her recommendation to the court a comment that defendant spoke Spanish and might need an interpreter. *See id.* at 101. She testified that, due to the large number of non-English speaking defendants being processed at the time, she had developed a practice of always including such information in the pretrial bail report to alert the court and counsel of any anticipated language barrier. *See id.*

### 4. Abbe Jolles

The government's final witness was Abbe Jolles, a criminal defense attorney admitted to the District of Columbia bar in 1982 and appointed to represent Torres on October 26, 1990. Although she could not specifically recall many of the details of her representation of Torres (which by the time of the hearing had occurred over seven years ago), Ms. Jolles testified that she remembered representing Torres, remembered preparing for trial with Torres's assistance, remembered discussing with Torres his offense, his prior record, and "everything that I thought was relevant in the preparation of his defense; everything, absolutely everything." *Id.* at 106. Ms. Jolles testified that she spoke to Torres only in English (she speaks no

---

[1]. When interviewed in May 1990, Torres gave his name as Cordero and presented identification supporting that identity. In October of 1990, he gave the name Sanchez. Neither name, of course, is his real name.

Spanish), that he spoke to her only in English, and that she could recall no difficulty in communicating with him. *See id.* at 107–08; *see also id.* at 112. Ms. Jolles stated that she did not recall Torres requesting an interpreter, and that she routinely obtained an interpreter if one was requested. *See id.* at 108. Although she could not characterize Torres's English ability, she testified that it was such that she was able to prepare his case. *See id.* at 109.

On cross-examination, Ms. Jolles testified that, on her CJA voucher, she billed for nineteen hours of conversations with Torres. *See id.* at 116. She also stated that she had discussed any plea offers with Torres, and that her recollection was that they were declined because Torres was unwilling to plead guilty and cooperate with the government. *See id.* at 122–24. When asked for her recollection of whether Torres's speech was similar to that on the tape played by Dr. Stansfield at the hearing, Ms. Jolles replied:

"I speak English; I do not speak Spanish. I recall liking Mr. Torres, establishing a relationship with him, and fighting for him and—and preparing a defense, hiring an investigator, and putting it all together, and being able to—to have his—Mr. Torres's assistance in doing that. He was in a halfway house. He wasn't in the jail, and so he was able to assist me, and I recall that he did that by helping me locate witnesses. That's how I found the witness that I was going to call."

*Id.* at 126.

When asked on redirect examination what the biggest difficulty was in representing Torres, Ms. Jolles responded not that it was difficult to communicate with Torres but that she had to complete the trial without her client after Torres absconded. *See id.* at 138–39.

In addition to the testimony of the witnesses discussed above (and related exhibits), the government also introduced the transcript of Torres's bond hearing before the late Judge Gasch. The transcript did not reflect the presence of an interpreter.

After the presentation of evidence, the Court entertained argument from counsel for the defendant and for the government. Counsel for Torres stressed the testimony of Dr. Stansfield, arguing that Torres's ability to convey basic personal information in English did not indicate an ability to effectively communicate with Ms. Jolles on complex and abstract issues such as the benefits of pleading rather than going to trial, or the application of the Sentencing Guidelines. Torres's counsel also called into question the credibility of Ms. Jolles's testimony.

Counsel for the government suggested that Dr. Stansfield's test may not have been reliable, because of the subjective element of the scoring and, more important, because of the possibility of Torres intentionally performing below his actual ability in an effort to benefit his case. Counsel for the government defended the competency of Ms. Jolles, noting that she would have been assisted in her communication with Torres by her years of experience as a criminal defense lawyer in this area, by her contact with the prosecutor, and by her face-to-face interaction with Torres. Counsel also stressed that even Dr. Stansfield conceded Torres's ability to indicate when necessary that he had *not* understood and that repetition and explanation would enhance the effectiveness of the lawyer-client communication. In addition to the argument on the facts, counsel for the United States contended that the *Strickland* standard is not met in this case because defendant had failed to show either unreasonable performance or prejudice.

## II. LAW

The law applicable to this motion is largely undisputed. The government offered no memorandum of law in opposition to defendant's motion, and the legal argu-

ment at the evidentiary hearing was limited.

Title 28, Section 2255 of the United States Code provides that "[a] person in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States... may move the court which imposed the sentence to vacate, set aside or correct the sentence." In the present motion, defendant claims that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.

## A. The Strickland Standard for Ineffective Assistance of Counsel Claims

The United States Supreme Court has held that a conviction will be set aside on the basis of ineffective assistance of counsel only if the defendant demonstrates both (1) that the performance of his counsel was unreasonably deficient and (2) a reasonable probability that, absent the deficient performance of counsel, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to the Court, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052.

■ With regard to the requisite demonstration of unreasonably deficient performance, the Court held that "a court must indulge a strong presumption that counsel's conduct falls within the wide range or reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. As for proving the requisite prejudice, the Court noted that prejudice is sometimes presumed in the Sixth Amendment context, in particular in cases of "actual or constructive denial of the assistance altogether."

*Id.* at 692, 104 S.Ct. 2052. In cases where the defendant alleges that the assistance actually provided was ineffective, however, the defendant is generally required to affirmatively prove prejudice. *See id.* at 693, 104 S.Ct. 2052.

## B. Lawyer–Client Communication and Non–English Speaking Defendants

■ The courts have recognized that the effective assistance of counsel guaranteed by the Sixth Amendment requires some measure of out-of-court communication between a defendant and his attorney. As the Supreme Court recognized in *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (citing *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)), the right to effective assistance of counsel attaches at the time judicial proceedings are initiated against a defendant. The Court emphasized that the right to "assistance of counsel cannot be limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during trial itself." *Id.*

Nearly a decade earlier, in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court had held that a defendant's Sixth Amendment right to effective assistance of counsel was violated when the trial court prohibited him from consulting with his attorney during a seventeen-hour overnight recess. The Court explained: "Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Id.* at 88, 96 S.Ct. 1330. The Court noted that " '[a defendant] is unfamiliar with the rules of evidence.... He lacks both the skills and knowledge adequately to prepare his defense, even though he [may] have a perfect one. He requires the guiding hand of counsel at every step in the proceed-

ings against him.'" *Id.* at 89, 96 S.Ct. 1330 (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)); *see also United States v. Mosquera*, 816 F.Supp. 168, 173 (E.D.N.Y.1993) ("Effective assistance of counsel is impossible unless the client can provide his or her lawyer with intelligent and informed input.")

The federal courts have also recognized that this aspect of a defendant's Sixth Amendment right may be implicated if the defendant does not have sufficient English-language ability to understand and participate in the proceedings and is not provided a translator.[2] Most recently, the Court of Appeals for the Ninth Circuit held in *Chacon v. Wood*, 36 F.3d 1459, 1464–65 (9th Cir.1994), that "[a]n accurate and complete translation of all attorney-client communications was necessary to ensure that Chacon received effective assistance of counsel." The court remanded the case for an evidentiary hearing on whether the interpreter had, as defendant alleged, rendered an inaccurate and misleading translation of defense counsel's communication with defendant, suggesting that defendant would serve three months in exchange for a guilty plea, when in fact the defendant was sentenced to ten years of imprisonment.

At least three courts of appeals, however, appear to have held that a defendant's right to an interpreter is satisfied so long as an interpreter is provided at the trial itself. *See Valladares v. United States*, 871 F.2d 1564 (11th Cir.1989); *United States v. Tapia*, 631 F.2d 1207, 1209–10 (5th Cir.1980); *United States* ex rel. *Negron v. State of New York*, 434 F.2d 386, 391 (2d Cir.1970). Justice Powell (then retired and sitting by designation) stated for the court in *Valladares* that, as a constitutional matter, the appointment of interpreters was a matter left to the trial court's discretion. *See Valladares*, 871 F.2d at 1566. The court in *Valladares* also found significant the defendant's failure to object to the adequacy of interpretive services at trial, warning that "[t]o allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse." *Id.* at 1566.

## III. APPLICATION

■ The Court might be inclined, on the foundation of the provisions and cases cited above, to hold that the reasonably effective assistance of counsel guaranteed by the Sixth Amendment includes out-of-court lawyer-client communication either directly in defendant's primary language or through an interpreter in the case of a defendant whose English-language ability is so low as to prohibit effective communication in English. However, the Court need not dwell on this issue, because defendant Torres has failed to demonstrate that his English-language ability was inadequate to permit effective communication between him and his attorney.

As an initial matter, the Court is thoroughly satisfied with Dr. Stansfield's credentials and values his opinion accordingly. However, in the Court's view, the testimony offered by Dr. Stansfield, taken together with the other evidence in this case, is simply not enough to carry the defendant's burden of establishing that his English-language ability was so inadequate as to render his communication with his counsel constitutionally defective.

The circumstances of Dr. Stansfield's interview with Torres give the Court some pause. For example, the doctor necessarily formed his opinion of Torres's communication skills on the basis of just one en-

---

**2.** Although defendant does not raise this issue, a district court may also have a statutory obligation to provide an interpreter for a defendant who "speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel . . . ." 28 U.S.C. § 1827; *see also United States v. Lim*, 794 F.2d 469 (9th Cir.1986); *United States v. Tapia*, 631 F.2d 1207 (5th Cir.1980).

counter, rather than observing his skills over the course of a communicative relationship such as that of client and counsel. As government counsel stressed, Torres also was almost certainly aware that Dr. Stansfield was there to evaluate his English proficiency and that the results could be important to any potential motion for a new trial or to set aside his sentence. While Dr. Stansfield opined that Torres was not "faking," the doctor's opinion again was based on very limited contact with the defendant.

The Court also notes Dr. Stansfield's testimony that Torres's English-language proficiency was better when discussing his legal case, because of the great incentive to communicate on this topic and no doubt from the frequency with which he had been required to discuss his situation in English. Both of these factors would have facilitated communication between Torres and his attorney during the preparation of his case and up until he decided to abscond on the second day of his trial.

Dr. Stansfield also stated that repetition, explanation, use of alternate vocabulary, and body language and nonverbal expression all facilitated communication, and would have facilitated communication between Torres and Jolles. This is supported by Jolles's testimony that she and Torres had formed a relationship and undertaken the preparation of his defense as a cooperative venture. Moreover, as Dr. Stansfield also noted, Jolles's access to police reports, the prosecution, and other secondary sources of information would have aided her communication with Torres.

These various factors testified to by Dr. Stansfield place his opinion as to Torres's speaking and listening proficiency in the proper context. Indeed, when discussing the potential subjectivity of the oral proficiency evaluation, Dr. Stansfield seemed to indicate that the purpose of the evaluation was to determine language proficiency in the oral and aural senses only, deliberately disregarding nonlinguistic and nonverbal communication. At issue here, however, is more than simply Torres'ss grasp of bare language—at issue is his ability to communicate with counsel in a meaningful way. As anyone who speaks a second language knows, it is much more difficult to understand a radio address or television news broadcast in the second language than to communicate face-to-face with another person. A person to whom the news in Spanish is unintelligible may be able to carry on professional and personal relationship of complex nature entirely in that language.[3] The doctor's opinion, therefore, while certainly helpful to the Court, does not sufficiently demonstrate Torres's inability to communicate in a constitutionally sound way with his counsel, particularly in light of the other evidence in this case.

With regard to other evidence, the government's witnesses were unanimous and unqualified in their opinion that Torres did not have difficulty speaking English, at least not to an extent that interfered with their interactions with him. Officer Coates spoke with the defendant on two separate occasions and collected personal information from him after his arrest. Officer Coates speaks no Spanish, and yet he testified that his communication with Torres was effective.

Likewise, Ms. Bergin's testimony was that she did not have communication problems with the defendant. Her testimony, supported by contemporaneously made records, was that she conducted Torres's investigative interview without and interpreter. She found it unnecessary to provide that notices be sent to him in Spanish. She also did not indicate on the bail report that defendant was a non-English speaker. Ms. Bergin testified to the high volume of

---

**3.** Dr. Stansfield testified that, at the time of his interview with Torres, the defendant indicated that he had an American girlfriend who spoke no Spanish. One would assume, however, that the two were able to communicate more deeply than the exchange of name, social security number, address, et cetera.

non-English speaking defendants being processed around the time of Torres's arrest; the steps that she failed to take in Torres's case would have been simple, accessible, and routine. Given her reputation and her credibility on the witness stand, the Court is persuaded that she found the defendant to communicate adequately in English; and given her relevant experience, the Court feels justified in according her determination substantial weight.

As for Ms. Jolles, the Court finds that her testimony soundly supports her actions in this case. She testified that Torres never requested an interpreter, and the defendant has never contended that he made such a request. Ms. Jolles also testified that she had an effective—and even cordial—relationship with Torres. Although defense counsel pursued several lines of cross-examination designed to impugn Jolles's competency, there was certainly no evidence capable of overcoming the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Taken as a whole, the evidence is simply insufficient to establish that Torres could not communicate with his counsel meaningfully and as (arguably, at least) guaranteed by the Constitution. Consequently, defendant has not shown that his counsel's failure to obtain an interpreter for out-of-court communications constituted unreasonably deficient assistance of counsel in violation of the Sixth Amendment.

Defendant, who has lived in the United States since 1972, was provided with an interpreter during all court proceedings in this case, at which the rapid pace of the proceedings could make communication and comprehension more difficult by making repetition, explanation, and nonverbal communication less practical. The Court finds that his English-language ability, while far from perfect, was sufficient to permit meaningful communication with his counsel during the preparation of his defense. Moreover, there is no indication in the record that he was ever denied the services of an interpreter; rather, he never requested such services for an out-of-court communication. The Court cannot find that the Constitution guaranteed more to this defendant.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion to set aside his sentence pursuant to 28 U.S.C. § 2255 will be denied.