**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0155n.06

No. 09-5973

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 16, 2011**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| JERRY STAMPER, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| CAMPBELL COUNTY, KENTUCKY, | ) ) | |
| Defendant-Appellee. | ) | |

Before: BOGGS and COOK, Circuit Judges; CARR, District Judge.[*]

COOK, Circuit Judge. Jerry Stamper's dispute with Campbell County (County) arises from its suspension of his telephone privileges at the Campbell County Detention Center (Detention Center) five days prior to his plea hearing. Stamper brought a § 1983 action, seeking class certification and alleging that the County's policy of punishing jail inmates for rules violations by denying them telephone privileges violated his Sixth Amendment right to counsel. The district court granted summary judgment to the County. Stamper now appeals, claiming that (1) the district court erred by failing to recognize that the policy completely denied him access to counsel during a critical

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

period, and (2) the County lacked a compelling reason for removing his telephone privileges. We affirm.

## I.

The incident that led to the telephone suspension at issue began when Stamper and his cellmates ignored a sergeant's instruction to remove hanging towels and clothing that obstructed her ability to see inside. Deputy jailers then searched the cell and located items of contraband including pieces of metal, shank pens, and a broken razor handle. The search, moreover, revealed that the inmates had papered over an area where they had removed concrete, creating a security risk. In response, the Detention Center suspended telephone use for the cell up to and including the day of Stamper's plea hearing. Prior to this suspension, Stamper's court-appointed attorney visited him at the Detention Center at least three times, spoke to him on the phone approximately three times, and received a letter from Stamper regarding the negotiation of a plea agreement. Stamper again met with his attorney the day of his plea hearing; he pleaded guilty to three counts and a fourth was dismissed. Stamper concedes his satisfaction with the plea agreement.

## II.

This court reviews a district court's grant of summary judgment de novo, affirming if, viewing all of the evidence in favor of the nonmoving party, no genuine issue of material fact exists.

*Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010);

*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010).

A.

Ordinarily, a defendant alleging ineffective counsel must show prejudice to prevail under the familiar *Strickland* standard. *See Mitchell v. Mason*, 325 F.3d 732, 740 (6th Cir. 2003). We presume prejudice, however, when "'circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Wright v. Van Patten*, 552 U.S. 120, 124 (2008) (alteration in original) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). Such circumstances include "the complete denial of counsel during a critical stage of the criminal proceeding." *Peters v. Chandler*, 292 F. App'x 453, 464 (6th Cir. 2008) (internal quotation marks and citations omitted).

Stamper urges us to construe the days prior to a plea hearing as a critical stage and to find that the County completely denied him counsel during this period. Specifically, Stamper argues for a bright-line rule guaranteeing pretrial detainees the ability to call their attorneys freely during the ten-day period prior to any hearing or trial. "In order to assess if a given portion of a criminal proceeding is a critical stage, we must ask how likely it is that significant consequences might have resulted from the absence of counsel at the stage of the criminal proceeding." *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007). To qualify, "[t]here must be a reasonable likelihood that [substantial] prejudice [to the defendant's rights] will arise from complete absence of counsel." *Id*. "[M]any of

the stages found to be critical are those in which an opportunity may be irretrieveably lost, or material may come out that may be incurably damaging." *Id*. at 314–15.

Stamper cites no authority for designating a certain number of days prior to a plea hearing as themselves critical. Instead, Stamper misguidedly relies on *Geders v. United States*, a case in which the Court deemed a seventeen-hour overnight trial recess that divided the defendant's direct testimony from his cross-examination a critical stage. 425 U.S. 80, 91 (1976); *see also Cronic*, 466 U.S. at 659 n.25. But *Geders*'s reasoning distinguishes *mid-trial* denial of counsel from Stamper's denial:

> Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events.

425 U.S. at 88. Unlike the ongoing proceedings described in *Geders*, pre-hearing days do not require changed strategy in light of new testimony or the need to discuss the day's events. Stamper has described neither an "opportunity [that] may be irretrievably lost" during this limited pre-hearing period, *see Van*, 475 F.3d at 314–15, nor a reasonable likelihood that substantial prejudice will befall him due to the absence of counsel during this time, *see id.* at 313. The days prior to a plea hearing thus do not qualify as a critical stage. *See United States v. Heal*, No. CR 02-09-H-CCL, CV 06-02-H-CCL, 2006 WL 2033955, at *2 (D. Mont. July 18, 2006) (finding that the period between

arraignment and a plea deadline did not constitute a critical stage because it lacked "trial-like confrontation" (internal quotation marks and citation omitted)).

Stamper finds better footing with his argument that the entire pretrial period qualifies as a critical stage. *See Mitchell*, 325 F.3d at 742. But to no avail: our inquiry centers on the pretrial period as a whole, *see id.*, and Stamper did not suffer a complete denial of counsel during this period. His confinement in the Detention Center began around October of 2004; he entered his guilty plea in May of 2005. During the intervening months, Stamper points to only five days during which County policy arguably denied him counsel. During the remainder of his pretrial detention, Stamper availed himself of his right to telephone, write, and consult in-person with his attorney; he did not suffer a complete denial of counsel.[1]

B.

Stamper additionally argues that, absent a compelling justification, any interference with the right to counsel violates the Sixth Amendment. "'[W]hen an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *United States v. Michigan*, 940 F.2d 143, 153–54 (6th Cir. 1991) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979)). Even

---

[1]Because Stamper's claim fails on the merits, we need not address whether he satisfied the *Monell* policy-or-custom requirement. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

if the telephone suspension violated the Sixth Amendment, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547. Stamper claims that no such necessity existed here, and describes the suspension as based on "a dirty bowl and some towels." Stamper's description elides the volatile situation the sergeant confronted, with inmates shouting and ignoring her orders. The ensuing search of the cell revealed a concealed hole in the wall and dangerous contraband—violations that the sergeant and the Campbell County Jailer agreed affected the safety and security of the jail. Granting the Detention Center administrators due deference, we find that Stamper fails to establish a Sixth Amendment violation. *See id*.

III.

For the above reasons, we affirm the judgment of the district court.