NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4684
_____

UNITED STATES OF AMERICA

v.

DANNY HARRISON,
a/k/a Danny White,

Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00768-1)
District Judge:  Honorable John R. Padova
_____

Submitted Under Third Circuit LAR 34.1(a)
June 18, 2012
_____

Before:  AMBRO, VANASKIE and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  June 29, 2012)
_____

OPINION
_____

AMBRO, Circuit Judge

On June 29, 2007, following a nine-day jury trial, Appellant Danny Harrison, a/k/a

"Danny White," was found guilty of:  two counts of distribution of five or more grams of

cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) (Counts I and II); one count of possession of 50 grams or more of crack with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count III); one count of possession of 50 grams or more of crack within 1,000 feet of a school, with intent to distribute, in violation of 21 U.S.C. § 860 (Count IV); one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count V); one count of possession of cocaine within 1,000 feet of a school, with intent to distribute, in violation of 21 U.S.C. § 860 (Count VI); one count of possession of marijuana in violation of 21 U.S.C. § 844(a) (Count VII); and one count of witness tampering in violation of 18 U.S.C. § 1512(b)(1) (Count VIII). Harrison was sentenced to 156 months' imprisonment. He now appeals both his conviction and his sentence. We affirm.

I.

Because we write solely for the parties, we recite only briefly the facts. In April 2004, a confidential informant named Jermaine Rippy informed Philadelphia police that Harrison was a significant drug dealer. Under the supervision of the police, Rippy conducted two separate controlled buys of crack cocaine from Harrison. After the second purchase, Rippy told police he was concerned for his safety; officers then obtained an arrest warrant for Harrison based on the two illegal drug sales.

Harrison was arrested at his home in August 2004. While in Harrison's house, the arresting officers observed evidence of drug trafficking activities in plain view and obtained a search warrant for the residence. The subsequent search uncovered over 170 grams of cocaine, 88 grams of crack, 12 grams of marijuana, a digital scale, packets

typically used to package drugs, nearly $100,000 in cash, and numerous pieces of identification and other documents related to Harrison.

Following his indictment, Harrison apparently learned, or at least suspected, that Rippy had been the confidential informant. In December 2005, Harrison and two associates, Reggie Hammond and Andre Abney (at least one of whom was armed), went to Rippy's house, accused Rippy of being the informant, and threatened to kill him and his family. Harrison ordered Rippy into a car, wherein Harrison's tone changed; Harrison proposed that Rippy could save himself, and make some money, if he would say that the drugs in Harrison's house belonged to him. Held essentially at gunpoint by the three men, Rippy agreed.

Harrison and Rippy then met with Harrison's attorney to discuss Rippy's proposed testimony. Rippy signed a written statement in which he falsely accepted responsibility for the drugs and money found in Harrison's house, and stated that Harrison did not know that the drugs were in the house. Harrison's attorney then provided the statement to the United States Attorney's Office.

Federal authorities subsequently realized that Rippy had been the confidential informant for the Philadelphia police, learned from Rippy of Harrison's threats, relocated Rippy's family for their protection, and added witness tampering to Harrison's charges. In connection with the witness tampering charge, the Government moved to disqualify Harrison's attorney, Dennis Cogan. After contesting the motion for a time, Cogan ultimately withdrew from the case and Stephen Patrizio was brought in as new counsel for Harrison.

At trial, the Government presented the testimony of Rippy and the various law enforcement officers, as well as an expert on narcotics trafficking. Harrison's principal defense was that Rippy's written statement was truthful. Harrison testified in his own defense that he let Rippy stay at his house and that the drugs, cash, and other items found during the police search belonged to Rippy. Harrison claimed that he did not see the drugs and drug paraphernalia that were in plain view in his home, and did not know that a digital scale was used to weigh drugs. He also testified that he was not familiar with all of the items in his own house. Harrison also called his mother and sister as witnesses, who each identified photographs of Harrison's house that they had taken a few days after the police search showing bunk beds in a back bedroom and various items of clothing. The photos were offered ostensibly to support Harrison's claim that Rippy lived with him. In contrast, police officers testified that there were no beds in the house other than in Harrison's bedroom, nor was there any clothing in the back bedroom.

Hammond, Harrison's brother-in-law, testified that he and Harrison never threatened Rippy. On both direct and cross-examination, Hammond admitted that he had been convicted of murder. All of these defense witnesses admitted attending a meeting with Patrizio at his office prior to trial to discuss the testimony that would be covered at trial. Cogan was present at this meeting.

During his closing argument, defense counsel vigorously attacked the integrity of the prosecution and the law enforcement personnel who testified at trial. For example, defense counsel stated, among other things, that:

4

- "the Government has lost its moral compass with respect to this prosecution";

- "there was not just a failure to investigate, but there were police failures and inappropriateness at every step of this investigation;" and

- the case against Harrison was a "trash case," and the prosecutor had been "misleading" and engaged in "misdirection."

In its rebuttal argument, the Government responded to defense counsel's comments about his integrity and the integrity of the testifying law enforcement personnel. The prosecutor stressed that there was no support for the defense's theory that the officers were lying or had distorted the evidence, explaining that the minor inconsistencies in the police testimony and paperwork had "the ring of truth." The prosecutor then compared this to the testimony of the defense's witnesses: "That is in stark contrast to what you know happened on the [d]efense side. By their own admission, all the [d]efense witnesses had a meeting at Mr. Patrizio's office." After the Court overruled a defense objection to this statement, the prosecutor continued:

> What do you think happened at that meeting? And what's their story that they have to get straight? Their story that they have to get straight is this never happened. . . . And remember, ladies and gentlemen, where we start. This defendant is charged with witness tampering. He's charged with trying to impact the integrity of this trial. It started with that [Rippy's] statement and it continued through this trial. You think for one moment he's going to hesitate to get up and lie? Now Mr. Patrizio didn't say it, but I'll say it, he lied, he lied. . . . He lied when he got up there and he said he doesn't approve of drugs. He lied when he said it was children and blah, blah. This man sold crack at his niece's birthday party for God sakes. If you think for a moment that he wasn't up there coached exactly how to put things, and what to say, of course he was ladies and gentlemen.

5

Defense counsel again objected; this objection was overruled by the Court.

Harrison was convicted of all charged offenses. His offenses involved a total of 171.83 grams of cocaine, 113.45 grams of crack, and 12.3 grams of marijuana, which triggered a base offense level of 32. He was subject to a one-level adjustment because some of his activity occurred in a school zone, and a two-level adjustment for obstruction of justice, for a total offense level of 35. Harrison was in criminal category I, and his Guidelines range was 168 to 210 months. Harrison also was subject to a 10-year mandatory minimum sentence for possession of more than 50 grams of crack with intent to distribute (Count IV). Harrison did not object to the Guidelines calculation or the description of the offense conduct in the presentence report. On December 21, 2007, the Court, as noted, sentenced Harrison to 156 months' imprisonment.

## II.

Harrison raises two issues on appeal. He first argues that the prosecutor engaged in misconduct by contending in his closing argument that Harrison had "lied" during his testimony and defense counsel had coached Harrison's testimony. Harrison also asserts that the 156-month sentence imposed by the District Court was procedurally and substantively unreasonable in light of the disparity in penalties for crack and cocaine offenses.

## III.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

Harrison did not contemporaneously object to the prosecutor's statements that he had lied during his testimony. We thus review this for plain error. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). Harrison did contemporaneously object to the prosecutor's comment that defense counsel had coached his testimony, an objection which was overruled. We review the District Court's ruling for abuse of discretion. *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). If a prosecutor committed misconduct, that conduct is reviewed under the harmless error standard. *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000).

We review sentences for both procedural and substantive reasonableness under an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). The burden of demonstrating unreasonableness is on the party challenging the sentence. *Id.*

IV.

Harrison first asserts that the prosecutor engaged in misconduct by arguing on rebuttal that Harrison had "lied" during his testimony and that he had been "coached" by his defense attorney. We reject this assertion.

A prosecutor "may state his views of what the evidence shows and the inferences and conclusions that the evidence supports." *United States v. Zehrbach*, 47 F.3d 1252, 1265 n.11 (3d Cir. 1995) (en banc). "The prosecutor is entitled to considerable latitude in

7

summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991).

Here, the comment that Harrison "lied" during his testimony was supported by, and certainly could be reasonably inferred from, the trial evidence. The prosecutor's statement also was made in the context of rebutting defense counsel's charge that Government witnesses had lied at trial, and was done to contrast Rippy's and the prosecution witnesses' testimony, which was supported by the evidence, with Harrison's testimony, which was not. In this context, we discern no error. *See Fahy v. Horn*, 516 F.3d 169, 204 (3d Cir. 2008); *United States v. Gross*, 961 F.2d 1097, 1107 (3d Cir. 1992). Indeed, as the District of Columbia Circuit Court of Appeals aptly stated, "[w]hen a 'lie' is an accurate description of the conduct at issue, we will not reverse a conviction because the prosecutor did not use a more delicate term." *United States v. Gartmon*, 146 F.3d 1015, 1024 (D.C. Cir. 1998); *see also United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991) ("In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying."). Likewise, the prosecutor's remark that defense counsel "coached" Harrison's testimony was not improper, as it was based on a reasonable inference drawn from the evidence—namely the meeting at Patrizio's office— produced at trial. *See Geders v. United States*, 425 U.S. 80, 89-90 (1976); *Molina*, 934 F.2d at 1445.

Further, even if they were improper, these comments were harmless because they did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process[.]" *Marshall v. Hendricks*, 307 F.3d 36, 64 (3d Cir. 2002) (internal

quotation marks and citation omitted). Moreover, evidence of Harrison's guilt was, at the least, substantial. Indeed, one could argue it was overwhelming.

Harrison next contends that the sentence of 156 months' imprisonment is unreasonable because the District Court did not grant an even larger downward variance from the undisputed Guidelines range of 168 to 210 months due to the crack/powder cocaine penalty disparity. We are not persuaded by this contention.

While it is true that the Fair Sentencing Act of 2010 modified the statutory penalties for crack offenses by reducing the crack-to-powder cocaine sentencing ratio from 100:1 to approximately 18:1, *see United States v. Dixon*, 648 F.3d 195, 196-97 (3d Cir. 2011), the Act does not apply retroactively where, as here, both the offense and the sentencing occurred before its enactment. *United States v. Reevey*, 631 F.3d 110, 114-15 (3d Cir. 2010). At the time of his sentencing in 2007, there existed a 120-month mandatory minimum sentence applicable to Harrison's drug offenses. Harrison in fact was sentenced to the minimum time possible under the old statutory scheme. The fact that the Sentencing Guidelines have changed since then is of no moment, and the subsequent reduction in crack-to-powder cocaine sentencing ratio does not by itself demonstrate that Harrison's sentence was procedurally flawed or substantively unreasonable. As Harrison presents no complaint as to the consecutive 36-month sentence tacked on as a result of the witness tampering conviction, we find no error with his 156-month sentence.

Consequently, we affirm Harrison's conviction and sentence.

9