OPINION
Defendant-appellant, Eric King ("the appellant"), appeals from a conviction in the Seneca County Court of Common Pleas. A jury found the appellant guilty of two counts of felonious assault, in violation of R.C.2903.11(A)(1) and (2). For the following reasons, we affirm the decision of the trial court.
The pertinent facts and procedural history are as follows. On the night of May 22, 2000, the appellant and some of his relatives dropped by the MR Party Bar ("the bar"), and sat at the end of the bar opposite from where the regular patrons congregated. After a time, only Eric, his uncle Tim Sharp, and his cousin John Sharp, remained of the appellant's group. Also, at the bar were fifteen to twenty other patrons including William Keckler, who engaged Tim in a short discussion. Their exchange of words led to an argument between the two, and Tim invited Keckler to step outside for a fight. Tim went outside, but Keckler remained inside the bar. When Tim returned to the bar, he and Keckler shook hands. Shortly thereafter, Keckler again approached Eric's group and a quick fight ensued. Eyewitness testimony indicates that Eric smashed a beer bottle over Keckler's head and stabbed him in the neck with the sharp remains of the bottle.
On July 20, 2000, the Seneca County grand jury indicted the appellant on two counts of felonious assault. A jury trial was held wherein both parties presented testimony and arguments of counsel. A unanimous jury returned a verdict of guilty on both counts of felonious assault. The appellant filed a motion for new trial on December 29, 2000 on the sole ground of prosecutorial misconduct. In support of the appellant's motion, the affidavit of Leigh Ann King was presented. The state responded with a motion and memorandum opposing the request for a new trial and a motion to dismiss. The state filed the affidavits of the prosecutors, Mark E. Repp and John P. Kolesar, with its response. On June 7, 2001, the trial court heard testimony from attorney John P. Kolesar, attorney Mark E. Repp, Michael Newcome, Russell Myers, Leigh Ann King, and attorney Richard A. Kahler. The trial court admitted all eleven exhibits offered by the parties into evidence. On June 19, 2001, the trial court issued a judgment entry denying the motion. The appellant now appeals asserting the following three assignments of error.
 ASSIGNMENT OF ERROR NO. I The trial court erred by not granting the defense motion for new trial under Criminal Rule 33, due to prosecutorial misconduct which materially impaired the appellant's substantial right to a fair trial.
In his first assignment of error, the appellant alleges that the trial court erred when it denied his motion for a new trial. The appellant moved for a new trial based on allegations that the state had polished and prepared three identifying witnesses, hid and altered exculpatory testimony, and failed to correct testimony that the prosecutor knew was in error or was false.
Crim.R. 33 states, in pertinent part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 (F) Motion for new trial not a condition for appellate review.
A motion for a new trial, filed pursuant to Crim.R. 33, is not to be granted lightly.[1] The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court and is not reversible upon appeal absent an abuse of discretion.[2] An abuse of discretion exists where the record shows that the court's attitude was unreasonable, arbitrary or unconscionable.[3] The discretionary decision to grant a new trial is an extraordinary measure, and should be used only when the evidence presented weighs heavily in favor of the moving party.[4]
The appellant has alleged two improper actions and/or inactions which may have constituted prohibited behavior on behalf of the state. The appellant claims that the prosecution's actions constituted misconduct in that: 1) the state coached a mentally/memory impaired witness just prior to his testimony so he would know where the defendant would be in the courtroom, and 2) the state did not correct or clarify the testimony of two witnesses who falsely stated that they had not met with the prosecution just prior to taking the stand.
"[T]he touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."[5] Further, the Supreme Court of Ohio stated that prosecutorial misconduct is not reversible error unless it deprives the defendant of a fair trial.[6] Absent an abuse of discretion, an appellate court will not reverse a trial court's determination of whether a prosecutor has gone beyond the bounds permitted.[7]
As stated by the United States Supreme Court in Mooney v. Holohan,[8]
the prosecutor is an agent of the state with a constitutional duty to assure the defendant a fair trial. Consistent with this notion are the prosecutor's obligations: (1) to refrain from knowingly using perjured testimony; (2) to disclose certain evidence favorable to the accused; and (3) to correct testimony he knows to be false.[9] The purpose of these obligations is to avoid the use of false or misleading testimony which could deceive the jury in their deliberations.
The appellant asserts that witness Russell Meyer was improperly coached and offered fake testimony that should have been corrected by the prosecutors. After telling the court that he witnessed the assault, Meyer was asked by the prosecution whether he could identify the assailant.
Q: Who did the stabbing?
A: He's in the courtroom now.
Q: Okay. Could you identify him?
A: Yes.
Q: By what he's wearing?
A: Yes.
Q: What is he wearing right now?
A: A suit.
Q: Where's he sitting?
A: On that side.
Q: Okay. Is he over here at this table?
A: Yes, he is.
Q: What color tie does he have on?
A: I didn't see his tie.
Q: You can't see it from there?
A: Huh-uh.
Q: Does he have glasses on?
A: Yes, he does.
On cross-examination, the defense asked Meyer whether one of the prosecutors had talked with him before he entered the courtroom. Meyer, a mentally and memory challenged individual, responded that he did not remember.
In fact, Meyer had spoken to the prosecutor. At the hearing on the motion for a new trial, Prosecutor Kolesar testified that, in preparing Meyer for the witness stand, he told Meyer where the state would be seated, where the defense would be seated, and where the defendant was sitting. Clearly, Prosecutor Kolesar's later testimony supports the appellant's contention that Meyer had been coached to a certain degree. On re-direct, Kolesar never refreshed Meyer's memory with the fact that they had met to prepare prior to Meyer's taking the stand.
A second eyewitness, Mike Newcome, also testified that the appellant was the assailant. On cross-examination, Newcome was asked how he had prepared for his trial testimony.
 Q: How did you, if at all, prepare for your testimony here today?
 A: I didn't. I talked to the Prosecutor two or three days ago and told him what I knew, but as far as preparing myself, uhm, I took a bath and put on some nice clothes.
Like Meyer, Newcome also failed to give the defense the desired response. Prosecutor Kolesar later testified that he had spoken with Newcome before he took the stand and that Newcome had asked to see his police interview. We note that defense counsel never directly asked Newcome if he had spoken with the prosecution that day. By rephrasing his question, he might have found the answer he was looking for.
Thus, two witnesses spoke with the prosecutors before trial but did not reveal this fact to the jury. Neither did the prosecution offer to correct or clarify the witnesses' statements on this matter. The appellant asserts that because the prosecution did not correct these witnesses' memory gaps or misstatements, misperceptions were created in the jury's mind that Meyer's and Newcome's memories were better than they actually were.
Arguably, false or vague statements were uttered that the prosecutor was aware of. However, we do not believe that the prosecutor, by his failure to clarify the fact that both Meyer and Newcome had been coached or had prepared before testifying, deprived the appellant of a fair trial. As the appellee points out, the trial and the hearing on the motion for new trial were adversarial proceedings at which the defense counsel was free to explore upon examination any coaching or preparation of the state's witnesses. In Geders v. United States,[10] the United States Supreme Court addressed the issue of coaching witnesses.
 The opposing counsel in the adversary system is not without weapons to cope with "coached" witnesses. A prosecutor may cross-examine a defendant as to the extent of any "coaching" during a recess, subject, of course, to the control of the court. Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it had developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination.
In the present matter, each of the eyewitnesses offered slightly different versions of the facts, between their statements to the police and their trial testimony, and from one eyewitness to another. Just as the trial court found, we too find no evidence that the prosecutors created, supported or enhanced the factual inconsistencies in the witnesses statements. Where one witness offered perjured testimony, the prosecutors did not knowingly use such testimony that they knew to be false. Each witness was subject to what defense counsel has described as "full searching" cross-examination to expose the weaknesses and discrepancies in their testimony. Both parties also agree that witness preparation is standard procedure in every case. For these reasons, we find no prosecutorial misconduct as it pertains to the testimony of Meyer and Newcome. We agree with the trial court's conclusions and find that the trial court did not abuse its discretion in denying the appellant's motion for a new trial.
Accordingly, the appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II This case must be reversed and remanded under Criminal Rule 33(A)(2) due to witness misconduct which materially impaired the appellant's substantial right to a fair trial.
Next, we address the question of witness misconduct on the part of Meyer, Newcome, and a third eyewitness, Robyn Presler. A trial court may grant a defendant a new trial if the conduct by a state's witness materially affects the substantial rights of a defendant.[11] In the court below, the appellant's motion for new trial was based solely on the ground of prosecutorial misconduct. The trial court, during the motion hearing, asked whether prosecutorial misconduct was the only ground that the court could consider or whether the law permitted the court to consider witness misconduct as well. The appellant responded that for witness misconduct to be considered, that ground would have to have been raised in his motion, which it was not.
It is axiomatic that a litigant's failure to raise an issue in the trial court waives his right to raise that issue on appeal.[12] The issue of witness misconduct, could have been raised in the appellant's motion for a new trial, but it was not. Thus, we decline to consider the appellant's second assignment of error.
 ASSIGNMENT OF ERROR NO. III The jury verdict was against the manifest weight of the evidence.
In order for a court of appeals to reverse a trial court's judgment on the basis that the adjudication is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony.[13]
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of the proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."[14]
To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all inferences, consider the credibility of the witnesses, and determine that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[15]
After reviewing the evidence, we cannot state as a matter of law that the trier of fact clearly lost its way and created a manifest miscarriage of justice or that a rational trier of fact could not have found the appellant guilty beyond a reasonable doubt as the testimony of three eyewitnesses supports the conviction. Accordingly, we cannot find that the conviction of two counts of felonious assault is against the manifest weight of the evidence. The appellant's third assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
SHAW, P.J., and BRYANT, J., concur.
[1] City of Toledo v. Stuart (1983), 11 Ohio App.3d 292, paragraph one of the syllabus.
[2] State v. Schiebel (1990), 55 Ohio St.3d 71, syllabus; Statev. Sage (1987), 31 Ohio St.3d 173, 180.
[3] Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 219.
[4] State v. Otten (1986), 33 Ohio App.3d 339, 340.
[5] Smith v. Phillips (1982), 455 U.S. 209, 210; see, also, State v.DePew, 38 Ohio St.3d 275, 284.
[6] State v. Maurer (1984), 15 Ohio St.3d 239, 266.
[7] Pang v. Minch (1990), 53 Ohio St.3d 186, 194.
[8] (1935), 294 U.S. 103.
[9] State v. Staten (1984) 14 Ohio App.3d 78, 83 (citations omitted).
[10] (1976), 425 U.S. 80, 89-90.
[11] CrimR.33(A)(2).
[12] State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus.
[13] State v. Thompkins (1997), 78 Ohio St.3d 380, 389.
[14] Id. at 387 (citations omitted).
[15] State v. Martin (1983), 20 Ohio App.3d 172, 175.